No. 34,906

JOSEPH DECICCO, *Appellant,* v. JOHN MORRELL AND COMPANY, *Appellee.*

(106 P. 2d 1053)

Opinion filed November 9, 1940.

*Erskine Wyman* and *Earl H. Hatcher,* both of Topeka, for the appellant.

*G. Clay Baker, Allen Meyers* and *Hubert Else,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is a workman's compensation case. The appeal presents only one question. We are asked to reverse the trial court and support the compensation commissioner in interpretation and application of the language "the loss of the first phalange of . . .

any finger" as found in the workman's compensation act (G. S. 1935, 44-510, ¶ 3 [6]).

On September 12, 1939, the appellant, Joseph Decicco, an employee of John Morrell and Company, suffered an injury to the index finger of his left hand when it was caught in a refrigerator door closed by another employee. He quit work September 13 and returned to work on October 16. Settlement by agreement was made by the parties, the amount agreed upon was paid, release signed by the employee, and the agreement and release, together with the medical report, filed with the commissioner. Under the agreement the workman was paid on the basis of three weeks and four days' wages, a total of $53.21, together with hospital and medical expenses of $39. No attack is made upon the procedure or upon the computation except as hereinafter stated.

Upon the filing of the agreement and release, the commissioner addressed a letter to the employer in which he noted that the medical report showed "portion of distal phalange left index finger torn off, taking portion of bone and detaching nail completely" and advised the employer that it was his opinion that "where any portion of the bone of the distal phalange of any finger is missing as a result of an accidental injury, compensation shall be paid for one-half the member." In other words, that the injury should be treated as though the workman had lost the entire first phalange of the finger. The following excerpts from the physician's reports constitute the medical findings here pertinent.

From the original report, October 14, 1939:

"PHYSICIAN'S REPORT BLANK

"The Injury:

"6. Give accurate description of nature and extent of injury and state your objective findings: Portion of distal phalanx left index finger torn off, taking portion of bone and detaching nail completely.

"7. Will injury result in: (a) Permanent defect? Yes. If so, what? Slight disfigurement. In case of member give: (1) period of total loss of use. None.

"11. Has normal recovery been delayed for any reason? Yes. Give particulars. Infection in distal phalanx.

"Treatment:

"14. Were X rays taken? Yes.

"15. Xray diagnosis: Fracture distal phalanx with portion of bone torn off.

"19. Is further treatment needed? No.

"Disability:

"20. Patient was/will be able to resume regular work on: October 16, 1939."

From the supplementary report, November 7, 1939:

"PHYSICIAN'S REPORT BLANK SUPPLEMENTARY REPORT

"The Injury:

"6. Give accurate description of nature and extent of injury and state your objective findings: Portion of distal phalanx left index finger torn off.

"7. Will the injury result in: (a) Permanent defect: Yes. If so, what? Shortening of tip of finger.

"Treatment:

"15. Xray diagnosis: Tip portion of distal phalanx left index finger fractured and end torn off."

From physician's letter to the commissioner, November 16, 1939:

"I wish to supplement my report to you made November 7, to give more exact information as to the amount of amputation. There was a slight portion of the distal phalange amputated and that portion amounted to approximately 3/16", or a fraction less than one-quarter of the original phalange.

"This individual has a functioning distal phalange and in fact while he lost the nail on the finger, same is coming back."

On the basis of these medical findings, the commissioner disapproved the mutual agreement and release, made a finding that the workman had "suffered an amputation of a portion of the distal phalange of the left index finger, which amputation included 3/16 of an inch of the distal portion of the distal phalange," that "the claimant has a functioning distal phalange" and ordered the employer to pay 20.35 weeks' compensation "for the reason that the commissioner rules that *as a matter of law, where any portion of the bone of the distal phalange is amputated such constitutes loss of the entire distal phalange* within the meaning and terms of the workman's compensation act."

On appeal from the commissioner's order, the trial court found for the employer and made an award in conformity with the mutual agreement hereinbefore referred to. The trial court held that "a proper construction of section 44-510, G. S. 1935, is that the language 'the loss of the first phalange of . . . any finger' means a substantial loss of such phalange and that a loss of 3/16" of the first phalange of the index finger, with the nail starting to return, is not a loss of the first phalange entitling the workman to compensation for loss of one-half of the entire finger for which twenty and 35/100 weeks' compensation would be allowable."

The issue is thus drawn between two interpretations of the statute, the commissioner holding that the *loss of any part of the bone* of the first phalange must be regarded as *loss of the whole phalange,* and

the trial court holding that there must be a *substantial loss of* the first phalange if the injury is to be considered loss of the whole phalange, and that the instant injury does not constitute such a loss.

Among the "scheduled injuries" enumerated in the act, compensation for the loss of the first or index finger is fixed at sixty percent of the average weekly wages during thirty-seven weeks (G. S. 1935, 44-510, ¶ 3 [2]). The "loss of the first phalange" of any finger or of the thumb is to be considered equal to the loss of one-half of the finger or thumb (G. S. 1935, 44-510, ¶ 3 [6]), and compensation paid accordingly. It is further provided in paragraph 3 (6) that the loss of the first phalange and any part of the second phalange which includes the "loss of any part of the bone of such second phalange" shall be considered to be equal to the loss of two-thirds of the finger.

Paragraph 3 (19), G. S. 1935, 44-510, deals with the "permanent *loss of use*" of fingers, hands, arms, etc. The substance of its provisions is that permanent *loss of use* shall be considered equivalent to the loss of the member, and that permanent partial *loss of use* shall be compensated in that proportion which partial loss of use bears to the total loss thereof.

We cannot agree with appellant's interpretation of the act. Under that interpretation the loss of the smallest possible portion of the bone at the end of the finger, with no loss of the nail, with no permanent interference whatever with the use of the first phalange or of the finger, would be regarded as loss of the entire first phalange. Appellant contends that unless such an interpretation is made there would be no basis whatever, under the act, for compensation for such an injury. Such a result does not follow. No matter how minor the injury to the end of the finger, if it in fact temporarily incapacitates the workman, he is entitled to compensation during the time of temporary disability. Such compensation was in fact agreed upon by the employer and employee in the instant case in conformity with the terms of the act.

If the result of the injury had been a permanent partial loss of use of the phalange, a basis for compensation would be found in paragraph 3 (19), G. S. 1935, 44-510. This would be true no matter how small a portion had been removed from the tip of the finger, or indeed if no portion at all of the bone had been removed. But appellant does not dispute the physician's finding of no functional loss; he does not contend that he has suffered any permanent partial loss of use of the first phalange or of the finger or that the injury has

resulted in any handicap in his work. Moreover, as suggested by appellee, let us suppose that at a later time appellant, who now has the full use of the injured phalange, has another accident and loses the entire phalange of the same finger, how then would compensation be fixed? Could he fairly be told that although by the second accident he had lost a perfectly good phalange he could not receive compensation because he had already been compensated for it? Or could the employer fairly be told that he would have to pay compensation for a second complete loss of the same phalange? There is nothing in the act to indicate that the legislature intended either such answer.

It is urged by appellant that the rule laid down by the district court that the loss must be "a substantial loss of such phalange" in order to be "a loss of the first phalange" within the meaning of the act is too indefinite for practical administration. It may be unfortunate that in many matters human wisdom and ingenuity are insufficient for prescribing mathematical or scientific formulas instantly applicable to whatever situation may arise. But the instant case presents nothing unusual in this regard, and we find no reason to set aside the rule or principle announced by the district court. We are told that three of the four administrative heads who have administered the act have followed a rule laid down in 1934 that "amputation of one-half or more of a distal phalanx is construed as amputation of *such a substantial part* of the phalanx that compensation is to be paid on the basis of loss of the entire phalanx." While that rule is not directly in issue here, it illustrates the way in which administrative bodies do seek to give practical application to sound principles. Whether there might be cases where the amputation of even less than one-half of the first phalange should be regarded as *substantial loss of the phalange* we need not speculate. Certainly if *loss of use* resulted, the injury would be so regarded under the provisions of paragraph 3 (19), G. S. 1935, 44-510. In any event, we think that the trial court was clearly correct in holding that the loss shown in this case was not so substantial as to be regarded as loss of the entire phalange.

Citation of cases from other jurisdictions is of little help on a question of this nature unless the decisions were made under statutes substantially similar to our own. We have examined all of the cases cited by both parties as well as others found in our own research. The interpretation placed upon the act by the district court is

abundantly supported by the authorities. (See 71 C. J. 840-841, and particularly cases cited in footnotes 37 and 38; 28 R. C. L. 819, § 104.) The only case cited by the appellant is *H. K. Toy, etc., Co. v. Richards,* 68 Ind. App. 653, 117 N. E. 260, wherein the workman's finger was caught by the knife of a machine "resulting in the loss by separation of a part of said finger near the base of the nail, including one-eighth of an inch of the first phalange thereof." Aside from the fact, perhaps of some importance, that the separation was of a part of the finger *near the base of the nail,* the injury was substantially the same as in the instant case. But the wording of the Indiana statute is materially different from ours. It provides for fifteen weeks' compensation "for the loss by separation of *not more than one phalange* of a thumb or *not more than two phalanges* of a finger" (italics ours). Under such a provision, loss of *any part of the finger that is not more than two phalanges* calls for the compensation stated, whereas under the Kansas statute there must be "loss of the first phalange" to justify the compensation here sought.

A leading case frequently cited in other jurisdictions is the New York case of *Matter of Petrie,* 215 N. Y. 335, 109 N. E. 549. The New York statute is almost identical with ours. In the Petrie case the workman lost "about one-third of the bone of the distal phalange" and "the amputation of the third finger on the right hand near the first joint." It was urged by the employer that compensation for "loss of the distal phalange" could not be enforced unless the *entire distal phalange* was lost. The court said that the act should not be interpreted too narrowly and held that the provision in question should become operative when it appears that "substantially all" of the phalange has been lost. Scheduled compensation was allowed on the grounds that under the facts "substantially all" of the distal phalange had been lost.

In a later New York case (*Mockler v. Hawkes,* 173 App. Div. 333, 158 N. Y. S. 759) the workman had lost "the tip of the bone" of the finger and such loss was held not to be a loss of the first phalange. The Petrie case was discussed and clearly distinguished on the facts. (See, also, *Geiger v. Gotham Can Co.,* 177 App. Div. 29, 163 N. Y. S. 678; *Tetro v. Superior Printing & Box Co.,* 185 App. Div. 73, 172 N. Y. S. 722, which involved a "loss more nearly approaching a one-fourth than a one-half of the distal phalange"; *Forbes v. Evening Mail,* 194 App. Div. 563, 185 N. Y. S. 592.)

The conclusion stated requires affirmance of the judgment. It is so ordered.