No. 47,536

Marvin Bergemann, *Appellant,* v. North Central Foundry, Inc., and Aetna Insurance Company, *Appellees.*

(527 P. 2d 1044)

Opinion filed November 2, 1974.

*George E. McCullough* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for the appellant.

*Floyd E. Gehrt,* of Gehrt, Roberts & Rieger, of Topeka, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Owsley, J.: In a workmen's compensation proceeding the trial court limited claimant's recovery to loss of a foot, a scheduled injury. He appeals, claiming he suffered a back injury which, combined with the foot injury, justifies an award of temporary total disability.

The accident to claimant occurred on October 30, 1972, and arose out of and in the course of his employment with the North Central Foundry, Inc. The accident was caused by the failure of a chain holding a large sand-filled bucket, which was being manipulated by claimant and co-employees. When the chain failed, the bucket dropped on claimant's foot. Claimant was seen by Dr. J. E. Lungstrum of Salina, Kansas, on October 31, 1972, and his injury was diagnosed as a severe crush injury to his right foot. Thereafter, claimant went through two surgical procedures resulting in partial

amputation of his right foot, and requiring three months of hospitalization. Claimant was twenty-three years of age and a high school graduate, but had no special training or skills. He claimed he had constant low back pain after the accident. Within twenty-four hours of his release from the hospital he called Dr. Lungstrum concerning his back. At that time an examination was made and treatment for the back was initiated.

Dr. Lungstrum testified that he overlooked the back complaints during claimant's confinement because he thought they would disappear. As a result of the February 20, 1973, examination of his back, the doctor testified claimant had a right lumbar scoliosis with some limitation of motion. He also stated X-ray examination revealed lumbarization of the fifth sacral on the left, with a left scoliosis takeoff and a marked narrowing of the L-5 S-1 interspace.

Through counsel, each of the parties made searching inquiries concerning the back and its relation to the accident and the foot injury. Dr. Lungstrum's opinion on this point was given in varying testimony. He stated that the low back pain "is probably due to prolonged immobilization and then being up and about on crutches with its inherent lack of symmetry and ambulation and the use of muscles unused for prolonged period of time." He also stated, "I feel that the back strain is undoubtedly due to his injury and now the imbalance that he has in walking." Again, he said, "I evaluated him more carefully on February the 20th and found that he had some symmetry and degenerative disc disease in the lumbar region of his back. This plus his continued complaint, I feel, that he has a chronic back strain and I can say that I feel that this was aggravated by his injury, by the subsequent hospitalization, and by the ambulation with crutches." On another occasion he stated, "[T]he violence of the injury that he received and his struggle to get away from the large weight that was crushing his foot certainly could have aggravated his back." As to disability, the doctor stated he thought the foot would hold up with proper protection, but as to the back, only time and trial would tell with certainty. He was also of the opinion the claimant could not perform heavy work, but could return to moderate activity.

The examiner found claimant was entitled to compensation for either temporary total disability or for a scheduled injury. He awarded the claimant six months' compensation and gave each party ninety days to complete all testimony and submit the matter to him for a final decision. Upon review, the director awarded the

claimant temporary total disability. On appeal to the trial court the claimant's award was limited to the scheduled injury. The court failed to award the healing period provided by K. S. A. 44-510d (23) and Director's Rule 51-7-12, but did allow future medical expenses not to exceed $5,000.

The trial court in its memorandum decision stated:

". . . [T]he back condition complained of by claimant is the result of the injury to his foot and the lack of a proper prosthesis to facilitate a balance and proper alignment of the back area. The court does not believe that it has the authority to exceed the scheduled injury, *i. e.*, loss of a foot, where the injury complained of to the back is merely the result of the loss of the foot."

Claimant argues the undisputed testimony of the only medical witness supported his contention that the back injury resulted from the accident rather than from the injury to the foot. We have heretofore quoted Dr. Lungstrum's testimony and in fairness must say he testified both ways on this point. Considering the complete record, we accept the trial court's finding; therefore, we must determine claimant's recovery in that factual concept.

Respondent's argument that the trial court was correct is succinctly stated in the following language:

"It would seem then that the present Kansas law is that an additional injury constituting general bodily disability will be allowed over and above a scheduled injury if the additional injury is: 1) caused by the accident itself, or 2) is a direct result of treatment to the scheduled injury. On the other hand, if the additional injury is an indirect result of the scheduled injury, then additional compensation is not allowed. In the instant case, the District Court has found that the additional injury was not a result of the accident itself but a result of the scheduled injury, and accordingly the District Court's ruling limiting compensation to the scheduled injury is correct."

We agree with respondent's statement that recovery for a general bodily disability may result from a scheduled injury coupled with an additional injury when the additional injury was caused by the accident. This rule is supported by *Richards v. J-M Service Corp.,* 164 Kan. 316, 188 P. 2d 939; *Fernandez v. Edgar Zinc Co.,* 138 Kan. 735, 27 P. 2d 239; and our recent decision in *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 506 P. 2d 1175.

We also agree with respondent that a general bodily disability has been allowed when the additional injury is a direct result of treatment to the scheduled injury. Illustrative cases are *Bidnick v. Armour & Co.,* 113 Kan. 277, 214 Pac. 808; *Duncan v. Davidson Construction Co.,* 170 Kan. 520, 227 P. 2d 95; and *Reed v. Clay Center Concrete & Sand Co.,* 184 Kan. 374, 336 P. 2d 405.

Respondent's contention that additional compensation cannot be allowed when the additional injury is a result of the scheduled injury is contrary to what we said in *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P. 2d 264. In *Jackson*, the claimant suffered an injury to his hands resulting in an amputation of the first and second fingers of the right hand, a partial amputation of his right thumb, and an amputation of the first finger of his left hand. A few months after the accident the claimant developed bicipital tendonitis in the right shoulder. Although there was medical testimony that the shoulder injury was related to the accident the trial court found the shoulder injury was temporary in nature and resulted from the injury to the hands. On appeal from a denial of compensation beyond the scheduled injury we reversed and directed an award be entered for temporary total disability. In so doing we stated the following rule:

"When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury." (Syl. ¶ 1.)

We are unable to make any logical distinctions between the facts in *Jackson* and the facts in the instant case, which would justify a different result. The rule in *Jackson* is supported by *Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P. 2d 684. In that case the claimant injured a finger. A virulent infection from flour entered the body through the injury to the finger. Several weeks of total disability occurred. The respondent claimed the statute prevented a recovery for the infection since the injury to the finger was a scheduled injury. The court said:

". . . In the instant case the total temporary disability was the result of the virulent infection which developed, and while it was caused or occasioned by the injury to the finger, it was something quite apart from the permanent disability of the finger after the total disability caused by the infection had terminated. In other words, as far as the permanent disability of the finger is concerned, an allowance for the temporary total disability did not constitute an 'additional compensation.' We think the purpose of the statutory limitation was to prevent 'additional compensation' directly related to or based upon the permanent injury for which allowance is made under the schedule. The rigid interpretation urged by the respondent would lead to wholly illogical results, and we do not think the statute requires such an interpretation. Moreover, this court has frequently said that the workmen's compensation act should be liberally construed to effectuate its purposes. (*Roberts v. City of Ottawa*, 101 Kan. 228, 165 Pac. 869; *Palmer v. Fincke*, 122 Kan. 825, 253 Pac. 583; *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 200, 34 P. 2d 542.)" (p. 944.)

In *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228, the claimant suffered a fracture of both bones of the right leg. His claim was presented and he was awarded sixty percent loss of use of the foot. He did not appeal and the compensation was paid. Before the last payment of compensation a petition to review and modify was filed. At the hearing on the petition it was shown that claimant walked with a limp which threw his body out of alignment and caused an unnatural use or strain upon the muscles of his leg and back. The statement of facts in the reported opinion fails to disclose whether the strain on his leg and back was disabling. One of the reasons for denying the claimant's petition was stated in the following language:

". . . Fundamentally, almost any scheduled injury under our workmen's compensation law produces some—perhaps slight, although it may be substantial—unnatural result upon normal bodily functions. If it were to be held that all such results constituted general partial disability under the statute there would be little or no purpose in having scheduled injuries. . . ." (p. 609.)

In *Riggan v. Coleman Co.*, 166 Kan. 234, 200 P. 2d 271, the claimant sustained a scheduled injury, followed by additional incapacity caused by a causalgia condition directly related to and arising from loss of a member. The court limited recovery to the scheduled injury on the theory the additional injury was only a referral of pain from the injured arm to the claimant's shoulder, neck and head. The court pointed out that the pain in the claimant's shoulder, neck and head did not result from an injury to the shoulder, neck and head, but resulted from the injury to the arm.

We approve of the conclusion reached in *Riggan*, but it is our view that the language used in *Cornell* is too broad for general application. We see no reason to depart from the rule stated in *Jackson*. In *Jackson*, we concluded that the injury to the hands caused the shoulder injury and considering both injuries the workman was entitled to total temporary disability. In this case the claimant's back injury was materially disabling in itself. The doctor testified the foot injury did not prevent claimant from working, but whether claimant could work depended on how the back stood up after a period of trial.

Claimant is entitled to a minimum award of 125 weeks for loss of the foot plus the healing period, as provided in K. S. A. 44-510d (14) and (23). In addition, claimant is entitled to a temporary total disability award beyond the period of the minimum award, subject to review and modification as provided in K. S. A. 44-528.

The merits of respondent's cross-appeal have been admitted by claimant and the trial court is directed to limit the medical expenses to $10,500 as provided in K. S. A. 44-510.

The case is reversed with directions to enter judgment in accordance with the views herein expressed.

FROMME, J., dissenting. The appellate role of this court requires us to accept the lower court's findings if there is any evidence in the record to support the same. As I read the brief of appellant he does not contend there is no evidence to support the findings. They should be held conclusive. The only question remaining for this court to determine on review is whether the trial court properly applied the law to its findings of fact. I believe it did.

There is neither a factual basis nor legal precedent to support claimant's contention that the district court should be ordered to enter an award for temporary total disability of not to exceed 415 weeks. The director stated that he entered such an award so claimant would have a leverage under K. S. A. 44-512a to assure prompt payments of compensation. No law appears which would support this type of ruling and the district court properly overturned such an award. The director made no finding that claimant was temporarily totally disabled. At the time of the original hearing before the examiner he found ". . . At the present time the case is not in a posture where the question of general body disability versus scheduled injury can be determined, . . ." The examiner entered an interim award of six months. Authority for such an interim award was established in *Bushey v. Plastic Fabricating Co.*, 213 Kan. 121, 515 P. 2d 735. In effect this court considers the case on the examiner's record but allows 415 weeks maximum award of total temporary disability without addressing itself to the facts in the examiner's record.

It appears that at the time of the original hearing the present case was in the same posture as that of *Bushey* wherein no final determination could be made. Dr. Lungstrum's undisputed testimony was that claimant could have returned to work within 30 days after November 8, 1973. Accordingly there is no basis in this record for allowing an award for 415 weeks total temporary disability in the absence of a review and modification hearing as provided in K. S. A. 44-510.

The district court found that claimant's back condition was not a direct result of the accident but was the result of claimant's loss of

his foot. All of the cases relied on to support the majority opinion contain a factual basis to establish that the additional disability, other than the scheduled injury, must arise as a result of additional injury which occurs as a result of the accident. In other words it had been established in each of those cases that the accident caused the scheduled injury and also additional injury to the body as a whole which was separate, distinct and compensable as a direct and natural result of the primary accident or injury. See *Riggan v. Coleman Co.*, 166 Kan. 234, 200 P. 2d 271; *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P. 2d 264; and *Berger v. Hahner, Foreman & Cale, Inc.*, 211 Kan. 541, 506 P. 2d 1175.

In *Berger* this court examined the factual situation in *Jackson* and said:

"It is true that in the *Jackson* case, as well as in other cases where compensation in addition to that provided for a scheduled injury has been awarded, there was some, even though slight, physical injury in addition to the scheduled injury. For example in the *Jackson* case, claimant suffered injury to his right shoulder in addition to the scheduled injuries to his right hand and left index finger. Among other cases in which we approved compensation for disability, in addition to that awarded for a scheduled injury, are [citations omitted]" (p. 545.)

The question in the instant case is closer to the factual situation presented in *Berger* where it is said:

". . . The question in the instant case, however, concerns the application of the statutory limitation to a further disability directly traceable to and resulting from the original injury.

. . . . . . . . . . . .

"In the case at bar, the uncontroverted medical evidence shows that claimant suffered a general bodily disability by reason of traumatic neurosis; he was described by the examiner as a very sick man and according to the trial court no longer able to perform his work. In such circumstances, it does not follow that merely because a scheduled injury was the precipitating factor in his complete disability, claimant's recovery should be limited to the amount allowed by the statute for the scheduled injury." (pp. 545, 546.)

However, the difference in the present case is that the evidence does support the trial court's finding that the back problem stemmed from the loss of claimant's foot and not from an additional injury. Accordingly the district court's order limiting compensation should be affirmed.

One additional matter concerns me and that is this court's allowance for the healing period for loss of the foot under K. S. A. 44-510d (23). It is true that the healing period allowed by the court has expired and will make no difference because of allowance of the

415 weeks of total temporary disability, however this fact alone cannot justify the allowance. The statute provides:

"(23) Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K. S. A. 1969 Supp. 44-510 as amended, and no additional compensation shall be allowable or payable for either temporary or permanent disability: *Provided, however,* That the director, arbitrator, or committee may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten percent (10%) of the total period allowed for the scheduled injury in question nor in any event for longer than fifteen (15) weeks: *Provided further,* That the return of the workman to his usual occupation shall terminate the healing period."

This statute and the rule promulgated by the director, 2 Kansas Administrative Regulations 51-7-12, are both permissive in nature and not mandatory. Accordingly an allowance for a healing period should rest on some factual situation presented to the examiner and should rest within the trial court's sound discretion. The present disallowance by the trial court should not be disturbed absent some finding of abuse of discretion. No facts are presented in the record from which this court can find an abuse of discretion by the trial court.

The case should be affirmed on appeal.

FONTRON, J., joins in the foregoing dissenting opinion.