No. 80,087

DONALD A. LANDRY, *Claimant/Appellant,* v. GRAPHIC TECH-
NOLOGY, INC., d/b/a GTI, *Respondent/Appellee,* and ITT
HARTFORD INSURANCE, *Insurance Carrier/Appellee.*

(2 P.3d 758)

Opinion filed January 28, 2000.

*Brad I. Pearson,* of DeSimone Pearson, L.C., of Overland Park, argued the cause, and *David J. DeSimone,* of the same firm, was with him on the briefs for appellant.

*Daniel L. Doyle,* of Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., of Overland Park, argued the cause, and *Jeffrey S. Austin,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This appeal raises the issue of the proper workers compensation award for Donald A. Landry. Landry sustained an injury while operating a printing press at work resulting in amputation of his fourth (little) finger and a portion of the fifth metacarpal (the bone extending from the fourth finger into the hand). The only issue in this appeal is the compensation award to be entered as it is undisputed that Landry's July 1995 injury arose from and in the course of his employment.

The treating physician, Dr. John Moore, IV, testified that he removed "the portion that was already damaged and just enough

of the metacarpal . . . to give [Landry] a more smooth, normal-appearing hand." Dr. Moore opined Landry suffered a functional impairment of 19% of the upper left extremity at the wrist level.

Dr. Daniel D. Zimmerman testified that Landry's injury was a partial amputation of the hand which resulted in a 41% functional impairment to the left upper extremity at the hand level.

The administrative law judge (ALJ) treated the injury as the loss of a hand and awarded Landry compensation for a 150-week period.

The Workers Compensation Board (Board) determined Landry's injury amounted to the loss of use of a portion of the hand rather than loss of the entire hand. The Board utilized K.S.A. 44-510d(a)(23), which states the loss of a scheduled member is to be rated using the American Medical Association Guidelines for the Evaluation of Physical Impairment, and averaged the functional disability ratings of two doctors to award benefits for a 30% functional impairment.

The Court of Appeals, in an unpublished opinion filed March 26, 1999, affirmed the Board. We granted Landry's petition for review. See Rule 8.03 (1999 Kan. Ct. R. Annot. 53).

*Statutes and regulations*

Mainly at issue in this case are certain provisions of K.S.A. 44-510d and K.A.R. 51-7-8, which relate to compensation for scheduled injuries.

K.S.A. 44-510d provides in relevant part:

"(a) . . . If there is an award of permanent disability as a result of the injury there shall be a presumption that disability existed immediately after the injury and compensation is to be paid for not to exceed the number of weeks allowed in the following schedule:

. . . .

(5) For the loss of a fourth finger, commonly called the little finger, 15 weeks.

(6) Loss of the first phalange of the thumb or of any finger shall be considered to be equal to the loss of ½ of such thumb or finger, and the compensation shall be ½ of the amount specified above. The loss of the first phalange and any part of the second phalange of any finger, which includes the loss of any part of the bone of such second phalange, shall be considered to be equal to the loss of ⅔ of such finger and the compensation shall be ⅔ of the amount specified above. The loss of the first phalange and any part of the second phalange of a thumb

which includes the loss of any part of the bone of such second phalange, shall be considered to be equal to the loss of the entire thumb. The loss of the first and second phalanges and any part of the third proximal phalange of any finger, shall be considered as the loss of the entire finger. Amputation through the joint shall be considered a loss to the next higher schedule.

. . . .

(11) For the loss of a hand, 150 weeks.

. . . .

(18) Amputation or severance below the wrist shall be considered as the loss of a hand. Amputation at the wrist and below the elbow shall be considered as the loss of the forearm. Amputation at or above the elbow shall be considered loss of the arm. . . .

. . . .

(21) Permanent loss of the use of a finger, thumb, hand, shoulder, arm, forearm, . . . shall be equivalent to the loss thereof. For the permanent partial loss of the use of a finger, thumb, hand, shoulder, arm, . . . compensation shall be paid as provided for in K.S.A. 44-510c and amendments thereto, per week during that proportion of the number of weeks in the foregoing schedule provided for the loss of such finger, thumb, . . . which partial loss thereof bears to the total loss of a finger, thumb, . . . but in no event shall the compensation payable hereunder for such partial loss exceed the compensation payable under the schedule for the total loss of such finger, thumb . . . exclusive of the healing period. . . .

. . . .

(23) Loss of a scheduled member shall be based upon permanent impairment of function to the scheduled member as determined using the third edition, revised, of the American Medical Association Guidelines for the Evaluation of Physical Impairment, if the impairment is contained therein."

## K.A.R. 51-7-8 states in relevant part:

"[b](3) If part of a finger, thumb or toe is amputated, compensation shall be calculated as follows:

. . . .

"(4) If a scheduled member other than a part of a finger, thumb or toe is amputated, compensation shall be computed by multiplying the number of weeks on the schedule by the worker's weekly temporary total compensation rate. The temporary total compensation previously paid shall be deducted from the total amount allowed for the member.

. . . .

"[d](1) An injury involving the metacarpals shall be considered an injury to the hand. . . .

"(2) If the injury results in loss of use of one or more fingers and also loss of use of the hand, the compensation payable for the injury shall be on the schedule for the hand. Any percentage of permanent partial loss of use of the hand shall

be at least sufficient to equal the compensation payable for the injuries to the finger or fingers alone."

### ALJ's decision

In awarding Landry 150 weeks of compensation for permanent partial impairment as if Landry's hand had been amputated at the wrist, the ALJ focused on the sentence of K.S.A. 44-510d(a)(18) that states: "Amputation or severance below the wrist shall be considered as the loss of a hand."

The ALJ considered this result similar to the result in *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 686, 527 P.2d 1044 (1974), where the claimant was awarded recovery for loss of a foot based on what the *Bergemann* opinion described as a "partial amputation of his right foot." However, the ALJ in the present case admitted that the question of whether to award the claimant compensation for "loss of" versus "loss of use of" the foot was not an issue in *Bergemann*.

### Board's decision

The Board did not agree with the ALJ's decision and explained its own decision in the following manner:

"Amputation of the little finger and a substantial portion of the metacarpal entitles the claimant to disability benefits at the level of the hand but does not entitle claimant to the 150 weeks of benefits given for amputation of the hand.

"The central issue in this case is whether the amputation, which included part of the fifth metacarpal as well as the little finger, entitles the claimant to the full 150 weeks allotted for loss of the hand or only a portion of that 150 weeks. In support of his argument for 150 weeks of benefits, claimant cites *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 527 P.2d 1044 (1974). In that case, claimant suffered a crush injury to this right foot and underwent surgical procedures resulting in partial amputation. The dispute in that case concerned the back complaints which appeared after the injury and hospitalization. . . . In discussing the facts, the Court stated that claimant is entitled to a minimum award of 125 weeks for loss of the foot plus the healing period. The entitlement to the 125 weeks was not at issue. The statement that claimant was entitled to 125 weeks was dicta. In addition, the opinion does not indicate where the amputation occurred, only that it was partial. For these reasons the Board does not consider the *Bergemann* decision to be binding precedent on the issue before the Board.

"Permanent disability benefits for injuries to the hand and fingers are governed by K.S.A. 44-510d. Subsection (a)(5) provides for 15 weeks of benefits for loss of

the little finger. Subsection (a)(11) provides for 150 weeks of benefits for loss of a hand.

"Claimant argues for the full 150 weeks, in part, on the basis of subsection (a)(18) of K.S.A. 44-510d:

"Amputation or severance below the wrist shall be considered as the loss of a hand. Amputation at the wrist and below the elbow shall be considered as the loss of the forearm.

"Claimant also points, in support of his argument, to provisions of K.S.A. 44-510d(a)(6) which states:

"Amputation through the joint shall be considered a loss to the next higher schedule.

"Finally, claimant refers to provisions of K.A.R. 51-7-8. Subsection (b)(3) of that regulation provides a method for computation of partial amputation of a finger or toe. Subsection (b)(4) then provides:

"If a scheduled member other than a part of a finger, thumb or toe is amputated, compensation shall be computed by multiplying the number of weeks on the schedule by the worker's weekly temporary total compensation rate.

"The Appeals Board concludes, however, that the language in K.S.A. 44-510d(a)(18) assumes a severance below the wrist which crosses the entire width of the hand. The Appeals Board has construed the statute in this fashion principally for two reasons. First, an amputation such as that suffered by claimant leaves a substantial portion of the function or use of the hand available to the claimant. It is, therefore, logical to treat it differently from the loss of the entire hand. In addition, the statute governing benefits for scheduled injuries, K.S.A. 44-510d, was amended in 1993. Subsection (a)(23) stated that loss of a scheduled member is to be rated using the third edition, revised, of the 'American Medical Association Guidelines for the Evaluation of Physical Impairment.'

"Section 3.1b of the [Guides] states:

"Amputation of all digits at the metacarpophalangeal joint level is considered to be 100% impairment of the hand or 90% impairment of the upper extremity. (Emphasis added.)

"Figure 3 on page 15 of those Guides specifies a percentage for amputation at each of the various possible levels of the hand. Amputations which do not run across the entire width of the hand are shown there at less than 100 percent of the hand. Amputation through the metacarpophalangeal joint on the little finger is rated as 10 percent loss of the hand and no higher rating is shown for amputation of the metacarpal below that joint. The Appeals Board concludes that the legislature intended that any amputation below the wrist, other than the specifically accounted for finger amputations, be treated on the basis of rating to the hand. The legislature did not intend that any and all such amputations be entitled to the full 150 weeks benefits for loss of the entire hand."

### Court of Appeals decision

The Court of Appeals affirmed the Board's interpretation of the statutes and regulations in issue and held that *Bergemann* does not govern this case.

After citing authority establishing the necessity of construing statutes to make them consistent, harmonious and sensible, the Court of Appeals concluded the Board's decision was more well reasoned and sensible in light of the Act's provisions and concluded:

"K.A.R. 51-7-8(d)(2) provides further support for the Board's decision. It states: '*If the injury results in loss of use of one or more fingers and also loss of use of the hand, the compensation payable for the injury shall be on the schedule for the hand.* Any percentage of permanent partial loss of use of the hand shall be at least sufficient to equal the compensation payable for the injuries to the finger or fingers alone.' (Emphasis added.) This regulation does not contemplate a finding that the hand has been amputated.

"Although K.S.A. 44-510d(a)(18) states: 'Amputation or severance below the wrist shall be considered as the loss of a hand,' the Board's interpretation that this means a severance which crosses the entire width of the hand is proper. Only claimant's fifth finger and a portion of his metacarpal were amputated. He maintains use of much of his hand." Slip opinion at 9.

### Standards of review and statutory interpretation

Our standard of review is statutorily defined by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* See *Nance v. Harvey County*, 263 Kan. 542, 550-51, 952 P.2d 411 (1997). Under K.S.A. 77-621(c)(4), we may grant relief where the agency has erroneously interpreted or applied the law. Interpretation of statutory and regulatory provisions are questions of law over which we have unlimited review. While we give deference to the Board's interpretation of the law, if such is interpreted or applied erroneously, we are to take corrective action. *Burton v. Rockwell International*, 266 Kan. 1, 5, 967 P.2d 290 (1998).

Because the primary issue in this appeal involves the interpretation of statutes and regulations, we note the applicable rules of statutory construction set forth in *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992):

" 'In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989).

'[T]he court must give effect to the legislature's intent even though words, phrases or clauses at some place in the statute must be omitted or inserted.' *Ross*, 245 Kan. at 594.

'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia.*' "

### Landry's contentions

Landry asserts that functional impairment ratings should never be the criteria for compensation of amputation injuries. He argues that amputations are treated differently than other scheduled injuries and that the legislature has created a sequential framework in which amputation through each successive joint requires compensation at the next higher level on the schedule whether the loss or loss of use of the scheduled member be partial or of the entire member.

Landry says the Board and Court of Appeals' ruling is in direct conflict with the wording of K.A.R. 51-7-8(b)(4), that states:

"If a scheduled member other than a part of a finger, thumb or toe is amputated, compensation shall be computed by multiplying the number of weeks on the schedule by the worker's weekly temporary total compensation rate."

Using this statement, Landry argues that because this regulatory subsection refers to and specifically excludes amputations of *part of* a finger, thumb, or toe, it means that partial amputations of all other scheduled members (like his hand) must be computed by applying the full number of scheduled weeks.

This argument illustrates the danger of reading one sentence in isolation from the other provisions of a statute or regulation. The "other than a part of" language of K.A.R. 51-7-8(b)(4) appears to be necessary because the previous subsection (b)(3) sets forth the method for computing compensation for amputation of "part of a finger, thumb or toe." The calculation of benefits for parts of fingers, thumbs, and toes in (b)(3) states compensation is calculated

by multiplying the percent of the loss as governed by K.S.A. 44-510d by the weeks on the full schedule for that member. The calculation of benefits for parts of fingers, thumbs, and toes in K.S.A. 44-510d is different from most of the rest of the schedule because it specifies the compensation for such losses at different joint levels for fingers, thumbs, and toes as *fractions* of the weeks allowed for loss of a whole finger, thumb, or toe. The two separate regulatory subsections simply attempt to address this aspect of the schedule. They are not persuasive authority for the result Landry champions.

Next, Landry argues that the Board's conclusion that K.S.A. 44-510d(a)(18) assumes a severance through the entire width of the hand is contrary to the last sentence of K.S.A. 44-510d(a)(6), which states: "Amputation through the joint shall be considered a loss to the next higher schedule." Because his amputation extended past the knuckle joint of his little finger, Landry contends (a)(6) means his partial amputation should be considered as the entire loss of the member of the next higher schedule, in this case, as loss of a hand.

The language of the last sentence of (a)(6) that Landry relies on is contained in a subsection that earlier sets forth the method and fractional losses in determining benefits allowed for amputations occurring at progressively higher points along fingers and thumbs, culminating in recovery for loss of an entire finger. The sentence which Landry relies on is not a separate subsection generally applicable to the whole schedule but must be confined to the subsection in which it is contained. Even if the sentence in K.S.A. 44-510d(a)(6) relied upon by Landry were considered more generally applicable to all scheduled members, that does not necessarily resolve the issue of whether the legislature really intended an amputation that passes "through" *one* of the joints connecting the digits to the hand to be considered the loss of the *entire* hand. The amputation to Landry's hand may have been an amputation beyond *one* of the five joints connecting the digits to the hand, *but the other four digits and the four joints connecting those digits to the hand are in tact—there was no amputation "through" those other four joints.*

Landry further notes that K.A.R. 51-7-8(d)(1) states: "An injury involving the metacarpals shall be considered an injury to the hand." He relies on this provision to support his argument that because the metacarpals are bones of the hand, an injury involving the metacarpals would be considered an injury to the hand. However, this wording of the regulation does not resolve the issue of whether the legislature intended an amputation to one metacarpal or a portion thereof of a hand to be considered an amputation of the whole hand for purposes of determining benefits.

Despite Landry's attempts to pick different sentences out of the regulations or statute to support his arguments, when they are read in their entirety, neither the statute nor the regulations provide precise guidance to resolve the statutory interpretation question we face.

As he did in the forums below, Landry relies on *Bergemann*, 215 Kan. 685, and also cites *McKinney v. Rodney Milling Co.*, 177 Kan. 401, 279 P.2d 221 (1955), as cases where the court has previously approved maximum benefits for loss of a scheduled limb under circumstances of partial amputation. We agree with the way the Board distinguished *Bergemann*. It is factually different and does not aid in resolving the issues before the court.

*McKinney* involved amputation of a claimant's lower leg a few inches below the knee. 177 Kan. at 402. The claimant was compensated under the schedule for loss of his lower leg, but the issues in the case were notice and whether there should also be award for temporary total and permanent partial general disability. *McKinney* provides no guidance on the present issue.

*Respondent and insurance carrier's contentions*

The respondent, Graphic Technology, Inc., and its insurance carrier, ITT Hartford Insurance, herein referred to as Employer, understandably rely on the logic and wording of the decisions of the Board and Court of Appeals.

Employer factually distinguishes *Bergemann* as has been done by the Board and the Court of Appeals. Employer argues that K.S.A. 44-510d(18) must be read in its entirety as simply describing which portion of the schedule to use (*e.g.*, the hand, the forearm,

etc.) as the starting point in determining disability for an amputa-
tion injury, rather than as a definitive statement that all amputa-
tions occurring below the wrist must be treated as loss of the *entire*
hand.

Employer next contends that Landry fails to show there is a
legislative mandate to treat an amputation injury differently from
a loss of use injury. Employer notes that if a body part is amputated,
the employee has obviously lost the use of it. In support of this
argument, Employer points to K.A.R. 51-7-8(d)(1) and (2), which
state:

"(d)(1) An injury involving the metacarpals shall be considered an injury to the
hand. An injury involving the metatarsals shall be considered an injury to the foot.

"(2) If the injury results in loss of use of one or more fingers and also a loss of
use of the hand, the compensation payable for the injury shall be on the schedule
for the hand. Any percentage of permanent partial loss of use of the hand shall
be at least sufficient to equal the compensation payable for the injuries to the
finger to fingers alone."

Employer relies on these provisions to argue that there is no
difference between the amputation of the body part and the loss
of the use of the body part. Here, Employer utilizes a portion of
the regulation without consideration of the entire regulation or the
statute upon which it is supposedly based. Accordingly, we find
this argument subject to the same criticism as Landry's arguments.

Most helpful to our analysis in this case is the Employer's reli-
ance on *Decicco v. John Morrell & Co.*, 152 Kan. 601, 106 P.2d
1053 (1940), which involved an issue closely analogous to the issue
we now face. Decicco suffered a work-related injury in which part
of the tip of his left index finger was torn off, taking a portion of
the bone and detaching the nail completely. The amputation in-
volved approximately 3/16" of the first phalange of his finger. He
suffered no loss of use and some of the nail on the finger regrew.
G.S. 1935, 44-510(3)(c)(6) (Corrick)—the counterpart to current
K.S.A. 44-510d(a)(6)—provided that "loss of the first phalange of
the thumb or of any finger shall be considered to be equal to the
loss of one half of such thumb or finger" and compensation paid
accordingly. The commissioner interpreted the provision to mean
that the loss of any part of the bone of the first phalange be re-

garded as the loss of the whole phalange. However, the trial court held there must be a substantial loss of the first phalange for the injury to be considered loss of the whole phalange and that Decicco's loss was not substantial. The claimant appealed and, in affirming the trial court's ruling, the Supreme Court stated:

"We cannot agree with the appellant's interpretation of the act. Under that interpretation the loss of the smallest possible portion of the bone at the end of the finger, with no loss of the nail, with no permanent interference whatever with the use of the first phalange or of the finger, would be regarded as loss of the entire first phalange. Appellant contends that unless such an interpretation is made there would be no basis whatever, under the act, for compensation for such an injury. Such a result does not follow. No matter how minor the injury to the end of the finger, if it in fact temporarily incapacitates the workman, he is entitled to compensation during the time of temporary disability. Such compensation was in fact agreed upon [in this case].

"If the result of the injury had been a permanent partial loss of use of the phalange, a basis for compensation would be found in paragraph 3[(c)](19), G.S. 1935, 44-510 [the counterpart to the current K.S.A. 44-510d(a)(21) providing compensation for permanent partial and permanent total loss of use of scheduled members]. This would be true no matter how small a portion had been removed from the tip of the finger, or indeed if no portion at all of the bone had been removed. But appellant does not dispute the physician's finding of no functional loss; he does not contend that he has suffered any permanent partial loss of use of the first phalange or of the finger or that the injury has resulted in any handicap in his work. Moreover, as suggested by appellee, *let us suppose that at a later time appellant, who now has the full use of the injured phalange, has another accident and loses the entire phalange of the same finger, how then would compensation be fixed? Could he fairly be told that although by the second accident he had lost a perfectly good phalange he could not receive compensation because he had already been compensated for it? Or could the employer fairly be told that he would have to pay compensation for a second complete loss of the same phalange?* There is nothing in the act to indicate that the legislature intended either such answer.

"It is urged by appellant that the rule laid down by the district court that the loss must be 'a substantial loss of such phalange' in order to be 'a loss of the first phalange' within the meaning of the act is too indefinite for practical administration. It may be unfortunate that in many matters human wisdom and ingenuity are insufficient for prescribing mathematical or scientific formulas instantly applicable to whatever situation may arise. But the instant case present nothing unusual in this regard, and we find no reason to set aside the rule or principle announced by the district court. . . . Whether there might be cases where the amputation of even less than one-half of the first phalange should be regarded as substantial loss of the phalange we need not speculate. Certainly if loss of use

resulted, the injury would be so regarded under the provisions of paragraph (3)[(c)](19), G.S. 1935, 44-510. In any event, we think that the trial court was clearly correct in holding that the loss shown in this case was not so substantial as to be regarded as loss of the entire phalange." (Emphasis added.) 152 Kan. at 604-05.

Thus, the opinion suggested that although Decicco had lost too little of the first phalange to reasonably compensate him based on a total *loss* of the phalange, had he suffered some permanent *partial loss of use* of the phalange, he could have recovered on that basis. Applying the principles and reasoning of *Decicco* to the present case suggests that where a claimant such as Landry does not lose a substantial portion of his hand so that compensation based on total loss of the hand would be unreasonable, he may still recover under the schedule based on the partial loss of use of the hand. *Decicco* supports the Board's decision in this case to treat Landry's injury on the basis of partial loss of use to the hand.

K.A.R. 51-7-8(d)(5) takes a similar approach where an amputation is so slight that it does not even go through the bone of the finger. That provision states: "If the tip of a finger, thumb or toe is amputated, the amputation does not go through the bone and it is determined that a disability exists, the disability rating shall be based on a computation of a partial loss of use of the entire finger." Though K.A.R. 51-7-8(d)(5) is obviously not directly applicable to Landry's case, it illustrates that, in some cases, it may be more appropriate to treat compensation for an amputation as a case of partial loss of use to the larger member.

Employer also makes some unique arguments based on two earlier Kansas cases, *Stefan v. Elevator Co.*, 106 Kan. 369, 187 Pac. 861 (1920), and *Neuhaus v. Hope Engineering Co.*, 132 Kan. 72, 294 Pac. 655 (1931), but we do not find these cases as helpful as *Decicco* in resolving the particular issue before us.

*Discussion and conclusion*

It is our duty to consider the entire Act and not merely isolated sentences thereof and to avoid interpretations which would lead to absurd or unreasonable results. In construing statutes and regulations, we are faced with inescapable medical testimony that while

Landry undeniably suffered the loss of and loss of use of his little finger and a portion of his fifth metacarpal bone, he did not lose his entire hand. His impairment to his hand was opined to be from 19% to 41%, which conversely would mean that he retained between 81% down to 59% use of his hand. To award compensation of 100% of loss of or loss of use of the hand under such a factual scenario would not be a reasonable interpretation of the applicable statutory provisions.

Based on our reasoning and comments described throughout this opinion, we agree with the Board and the Court of Appeals' holding that K.S.A. 44-510d and, most specifically, (a)(18) do not require treating Landry's injury as the loss of his entire hand and that his award was properly based instead on the percentage of the loss of use of his hand.

As a final note, we have considered Landry's criticism of the Board's and Court of Appeals' reliance on K.S.A. 44-510d(a)(23) to support their decisions. This provision referencing American Medical Association Guidelines for the Evaluation of Physical Impairment (Guides) was added to K.S.A. 44-510d by certain 1993 amendments, and a similar reference was also added in 1993 to K.S.A. 44-510E(a), which formerly only required "competent medical evidence" to establish functional impairment in unscheduled cases. K.S.A. 1992 Supp. 44-510e(a).

Despite extensive research of the relevant legislative history and a review of various other materials, including seminar discussions about the wholesale changes to the 1993 Act, we find no clear legislative intent that allows us to make any definitive statement that enactment of 44-510e(a)(23) was intended to govern the issue of whether to treat injuries like Landry's as "loss of use" versus "loss of" injuries. However, having determined on other grounds that the award for Landry's injury was properly based on the partial loss of use of his hand, we also find that the physicians in this case properly used the Guides in rendering their opinions as to the percentage of Landry's loss of use.

The Court of Appeals and the Board are affirmed.