No. 37,613

Earnest Alexander (Claimant), *Appellee*, v. Chrysler Motor Parts Corporation (Respondent), and Hartford Accident and Indemnity Company (Insurance Carrier), *Appellants*.

(207 P. 2d 1179)

Opinion filed July 9, 1949.

T. F. Railsback, of Kansas City, argued the cause, and Walter Fuller, Jr., of Kansas City, was with him on the briefs for the appellants.

James H. Barnes, of Kansas City, and Harry C. Clark, of Kansas City, Mo., argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: In this workmen's compensation case the commissioner found the claimant was entitled to compensation for twenty-five percent permanent partial general disability beginning one week after the date of an accidental injury for a total period not to exceed 415 weeks payable at the rate of $7.11 per week and entered his award accordingly. On appeal to the district court the findings of the commissioner were approved and the claimant was granted a similar award and judgment. The employer and insurance carrier appeal.

By stipulation at the hearing before the commissioner and at the trial in district court it was agreed the claimant met with personal injury by accident on February 26, 1947; that there was due notice of injury; that the relationship of employer and workman existed on such date; that the parties were governed by the workmen's compensation act; that claim was made as required by law; that the Hartford Accident & Indemnity Company was the insurance carrier and a proper party to the action; that no compensation had been paid for the injury; that some medical treatment was furnished by the respondent's physicians; and that the claimant's average weekly wage was $47.40.

From an examination of the evidence disclosed by the record it appears the circumstances and conditions under which the claimant was working and the events leading up to the institution of his claim for compensation are not in serious dispute and for our purposes can be stated thus: The claimant was employed on the shipping dock of respondent's plant in Kansas City and up to and for several weeks subsequent to the date of his alleged accident his job was that of a trucker using a two-wheeled toe truck to carry packages to appropriate spots on the dock from the scale house. This house was in the center of the dock and there was a runway leading to it from each side eighteen or twenty inches above the floor, with rollers embedded in its surface. The packages were made up inside the plant and placed on this runway where employees pushed them down to the scale house. They were then weighed and dumped out onto the floor of the dock. They ranged

in weight from two or three pounds to 450 pounds or thereabouts. Claimant's job at and before and for some time after his alleged accident was that of an off-bearer, picking up these packages and hauling them away on his two-wheeled rubber-tired toe truck. In order to load a heavy box, it was necessary for claimant to push it away, put the toe of the truck under the edge of the box, and then pull such box back onto the truck, after which he wheeled it away to its destination. In the performance of this work claimant wrenched his back while reaching out to pull one of the boxes onto this truck. The accident occurred Wednesday morning, February 26, 1947, and disabled him from working for ten or fifteen minutes. He was then able to resume his work. He said nothing about the matter to his supervisor on that day but talked to him on Friday and told him he had wrenched his back. The supervisor asked if he wanted to go to a doctor to which inquiry claimant replied he would wait until Monday and if it was not better he would go then. The following Monday afternoon the claimant went to the office of Doctor Regier, the respondent's physician, accompanied by his superintendent. There he was examined, taped up and sent back to work with a light-work certificate. Claimant gave this certificate to the superintendent who, after looking it over, instructed him to give it to his supervisor. He did so. That was the last he heard of it for several days and no arrangements were made to give him lighter work. About eight or nine days after the accident claimant inquired of his supervisor as to what they were going to do about his light-work certificate. The latter replied he did not know. That same day he and the supervisor went back to the same physician for another examination. He was advised respondent had given that individual orders not to issue any more light-work certificates and that employees would either work or go home. Claimant went back and kept on working but within a few days, on his own initiative, he ceased work on the toe truck and started pushing packages on the runway or conveyor line which was lighter and easier work. The respondent made no objection to this change and claimant remained on the latter job at the same wage until March 20, 1947, the date on which he filed his claim for compensation. In fact the record discloses he continued to work on that job without any loss of time or pay until the day before the hearing before the commissioner.

Little if anything is to be gained by a review of the evidence per-

taining to the character, extent or duration, of the disability suffered by claimant as a result of his accidental injury. The rule in this jurisdiction, so often repeated as to hardly require reference to our decisions, is that it is the function of the trial court to pass upon the facts in a compensation case and that under G. S. 1935, 44-556, this court is limited on appellate review to "questions of law" which, in the final analysis, simply means that its duty is to determine whether the trial court's factual findings are supported by any substantial competent evidence (*Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846; *Walker v. Arrow Well Servicing Co.*, 163 Kan. 776, 186 P. 2d 104; *Conner v. M & M Packing Co.*, 166 Kan. 98, 101, 199 P. 2d 458). Indeed, in applying this rule, we have expressly held that the existence, the extent, and the duration of an injured workman's incapacity is a question of fact for the trial court to determine. (*Brewer v. Vinegar Hill Zinc Co.*, 119 Kan. 355, 239 Pac. 762; *Voiles v. Proctor & Gamble Mfg. Co.*, 141 Kan. 451, 41 P. 2d 723; *Mihoover v. Winter Livestock Commission Co.*, 155 Kan. 432, 125 P. 2d 363; *Cowan v. Kerford Quarry Co.*, 146 Kan. 682, 685, 72 P. 2d 999, and cases there cited; see, also, West's Kansas Digest "Workmen's Compensation," §§ 1939, 1940.)

In the instant case the appellee claimed to be suffering from a disabling low back injury. In his testimony he described such injury, stated that prior to its occurrence he had nothing wrong with him and that subsequent thereto it interfered in numerous ways with his performance of the work he had been doing and that it caused excruciating pain. There was medical testimony to the effect he had the symptoms and conditions of a bad back; that whatever injury had occurred to his back caused pain; that he appeared to be suffering from an extruded intervertebral disc; that his disability was permanent and partial and remained the same regardless of its cause, and that a fair approximation of his incapacity was twenty-five percent. Without reference to other testimony of like import it suffices to say that what has been heretofore related upholds the trial court's finding of permanent partial general disability.

At this point it should be stated appellants do not question the correctness of the amount allowed as compensation under the award if the trial court did not err in the rendition of the award itself.

Appellants' first and principal contention has to do with G. S. 1935, 44-501, fixing the obligation between employer and employee under the compensation act, and is based upon the construction they gave to that particular portion thereof which reads as follows:

". . . *Provided,* That (a) the employer shall not be liable under this act in respect of any injury which does not disable the workman for a period of at least one week from earning full wages at the work at which he is employed; . . ."

As applied to the particular facts of this case the gist of appellants' argument is that because the record discloses the appellee after being injured went back to his old job and performed the duties of his employment with respect thereto at the same wage for a period of more than seven days he has no valid claim for compensation. To uphold this position would require us to conclude the portion of the statutory section just quoted means, not only in this case but in compensation cases generally, that a workman within the purview of the compensation act who suffers an accidental injury but goes back to work for a period of one week and performs the duty of his position at the same wage is precluded from thereafter recovering compensation notwithstanding he performs that work while partially incapacitated and even though subsequent unforeseen complications arise which cause permanent partial incapacity. We do not believe such a construction complies with the intent of the legislature, is warranted by the quoted language itself or is in accord with our former decisions construing its terms, which we pause to note, have been a part and portion of the compensation act since it was first enacted in 1911.

In our opinion proper construction to be given the portion of the statute on which appellants now rely to recover the judgment was long ago indicated and decided by this court when at page 850 of the opinion of *Raffaghelle v. Russell,* 103 Kan. 849, 176 Pac. 640, it said:

"The statute quoted does not mean that unless a workman's injuries totally disable him from laboring for the first two weeks succeeding his mishap he cannot recover. It means that unless the injury is sufficiently serious to disable him for two weeks, the injury is considered by the statute to be too trivial for its concern. . . ." (p. 850.)

And held:

"A workman who is injured in the course of his employment is not to be denied compensation for such injury and consequent diminished earning capacity merely because his injury was not so serious as to totally disable him from labor for the first two weeks immediately succeeding the accident.

"An injured workman who only in pain and distress and with the friendly help of his fellow workmen can earn as much as he did before his injury, may maintain an action against his employer for permanent partial incapacity under the workmen's compensation act." (Syl. ¶¶ 1, 2.)

To the same effect is *Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431, which holds:

"Under the workmen's compensation act (Laws 1911, ch. 218; Laws 1913, ch. 216) an employee who, as a result of an injury to his fingers, cannot tightly close them in his hand, and is thereby rendered less able to perform his work, is partially incapacitated from performing labor.

"An employee partially incapacitated by an injury from performing his labor does not lose his right to compensation under the workmen's compensation act by remaining in the employment of his master at his former wages." (Syl. ¶¶ 1, 2.)

See, also, *Harvey v. Eldridge & Majors Packing Co.*, 128 Kan. 403, 278 Pac. 16, which cites the two decisions last mentioned, approves the rule therein announced, and holds:

"Under the provisions of the workmen's compensation law (act of 1911 and amendments thereto) a workman partially incapacitated is not to be denied compensation on account of resuming work for the same, or greater, remuneration than before his injury.

"Nor is an injured workman to be denied compensation where, at the request of his employer, who is short-handed, he returns to his employment and does such work as he can in spite of his injury." (Syl. ¶¶ 1, 2.)

Further support for the rule announced in the foregoing decisions is to be found at page 717 of the opinion of *Rupp v. Jacobs*, 149 Kan. 712, 88 P. 2d 1102, where *Gailey v. Manufacturing Co.*, supra, is quoted with approval and it is said "an employee partially incapacitated does not lose the right to compensation by remaining in the employment of his master at his former wages."

In the instant case, upon substantial competent evidence, the trial court found claimant's injury was sufficiently serious to cause him permanent partial disability for far longer than the one week period mentioned in the heretofore quoted section of the statute. We cannot disturb that finding of fact. With such a factual situation, under the foregoing decisions, claimant's injury was compensable under the act notwithstanding he returned to work within one week period and continued the work for his employer at the same wage and for the length of time and under the conditions and circumstances herein indicated. To hold otherwise would do violence to the well-established rule long recognized by the court (See *Ellis v. Kroger Grocery Co.*, 159 Kan. 213, 221, 152 P. 2d 860; *Clifford v. Eacrett*, 163 Kan. 471, 475, 183 P. 2d 861, and cases there cited) that the existing provisions of the workmen's compensation act must be liberally construed in favor of the workman with the view of effecting its purpose.

Perhaps in anticipation of the conclusion just announced appellants suggest that, even so, liability of employers under the proviso in question should be limited to situations where employees are either unable to perform all the former duties of their employment or carry on with the aid and assistance of their co-workers. Not so. The intent and purpose of such provision is to protect employers from trivial and inconsequential claims, not to preclude workmen who have bona fide claims from asserting them within 120 days as authorized by G. S. 1947 Supp. 44-520a.

In arriving at the conclusion just announced we have not been unmindful of *Whitby v. Armour & Co.*, 114 Kan. 445, 219 Pac. 253, cited by appellants in support of their position. The decision in that case was based on failure of the claimant to make a claim for compensation within the time prescribed by the act and is not decisive. Nor have we overlooked *Chappell v. Morris & Co.*, 118 Kan. 210, 235 Pac. 117, on which they heavily rely. We are not disposed to attempt to distinguish this last case even though that might be done. It is, however, to be noted it merely upholds a trial court's ruling in sustaining a demurrer to evidence and does not involve the review of an award based upon favorable findings of fact such as we have here. Be that as it may, it suffices to say that if what is there said and held is suscepitble of a construction that the heretofore quoted proviso of G. S. 1935, 44-501, precludes a workman from recovering an award for compensation under the facts and circumstances of this case, it is contrary to what has been held in the other decisions to which we have referred and should be and is hereby disapproved.

We come now to appellants' final contention that appellee's refusal to submit to a myelographic examination for the purpose of ascertaining if the source of his incapacity was an extruded intervertebral disc and if so to submit to a surgical operation by some neurosurgeon for its correction compelled the district court to refuse him an award for compensation. This claim requires far less consideration than the one we have just determined.

Summarized, it can be said the trial court had before it evidence that such an examination might not reveal the source of claimant's incapacity, that even if it did disclose an injured disc an operation might not be successful and in any event would leave the claimant with a ten percent permanent partial disability. It also had testimony to the effect that both the examination and the operation

involved considerable pain and discomfort and that the operation itself was dangerous. In addition it also had testimony on the part of the claimant as to the reasons for his refusal to submit to either the examination or the operation. Upon consideration of all those facts it found the probabilities of a permanent cure were not great and that instead the weight of the testimony was there would be a residual permanent partial general disability even if the operation was performed. It further found the refusal of the claimant to undergo the examination or test and possibly the subsequent operation tendered by the appellants was not unreasonable and under all the facts and circumstances such refusal did not prevent his recovery.

This court has repeatedly held (*Strong v. Iron & Metal Co.*, 109 Kan. 117, 198 Pac. 182; *Gilbert v. Independent Construction Co.*, 121 Kan. 841, 250 Pac. 261; *Gentry v. Williams Bros.*, 135 Kan. 408, 410, 10 P. 2d 856) the reasonableness of the refusal of an injured employee, seeking recovery of compensation under the act, to permit an operation to be performed is a question of fact to be determined by the trial court from all the evidence. It follows, under the rule limiting the scope of appellate review in compensation cases to questions of law, that where—as here—there is evidence to support trial findings of the character just described this court cannot disturb them.

We find nothing in the record or in the contentions advanced by appellants which requires a reversal of the judgment. It is therefore affirmed.