No. 44,107

Ida Poehlman, *Appellant,* v. Norman Leydig, d. b. a. Martha's Cafe, and The Travelers Insurance Company, *Appellees.*

(400 P. 2d 724)

Opinion filed April 10, 1965.

*William H. Stowell*, of Phillipsburg, argued the cause, and *Doris Dixon Stowell*, of Phillipsburg, was with him on the brief for the appellant.

*Steven P. Flood*, of Hays, argued the cause, and *Clayton S. Flood*, of Hays, was with him on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This is a workmen's compensation case brought by Ida Poehlman, hereinafter referred to as claimant, against Norman Leydig, doing business as Martha's Cafe, and his insurance carrier, The Travelers Insurance Company, hereinafter referred to as respondent.

The sole question is: In computing compensation to be paid, may the court apportion the compensation percentagewise according to the proportion of disability sustained by a claimant who had a pre-existing bodily disability when he sustained a second injury in the course of his employment, which, coupled with the previous disability, resulted in total disability, thus rendering him unable to perform work of the same kind and character as he was performing at the time of the second injury?

The facts insofar as pertinent to the appeal are as follows: The claimant, a fifty-five-year-old woman, had been working steadily as a cook and waitress for the respondent, performing all of her duties as such. On December 22, 1960, claimant, while engaged in the due course of her employment with respondent, slipped on soapy dishwater, fell, and fractured her right hip. In spite of noticeable pain thereafter, claimant continued to work for about a month. When the pain became quite severe she consulted Dr. V. W. Steinkruger who immediately placed her in the hospital where on January 26, 1961, by X-ray examination, it was disclosed claimant had an impacted fracture of the right femoral neck. After a week's hospitalization claimant was placed on crutches, released from the hospital and returned to her home. She suffered pain in the hip socket and the entire leg was stiff and sore. Claimant attempted to perform work for the respondent, but because of the intense pain she was forced to quit. She attempted to relieve the pain by taking aspirins.

Before her fall in December 1960, claimant was suffering from bilateral venous insufficiency in both lower legs, inadequate nutrition, a flexor contracture of the right foot and possibly some arthritis in the low back as well as other functional impairment.

Dr. Steinkruger testified that, in addition to the conditions

present at the time of the fall, the claimant was also suffering degenerative arthritis of the lumbosacral spine and thoracic spine and trochanteric bursitis of the right greater trochanter. He testified the degenerative arthritis of the lumbosacral spine was aggravated by the fall and the bursitis of the right greater trochanter was either precipitated or aggravated by the fall, but that the remaining diagnoses were present prior to the fall and were neither aggravated nor precipitated by this accident. It was Dr. Steinkruger's opinion the claimant is presently disabled for full-time work as a cook and a waitress by reason of all of her medical conditions. He further testified the lumbar degeneration and bursitis alone would disable an ordinary person not more than 50 per cent but refused to apply this disability to the claimant because of her other disabilities.

Respondent's doctor, Irvin H. Mattick, testified, "As far as her disability to perform her occupation as a waitress or cook is concerned, she was, as of Jan. 7, 1962, totally disabled." He further stated claimant complained of pain over the knob of the hip bone and that X-rays revealed increased density on the right side of the back, but placed claimant's disability as a result of the accident as low as 10 per cent permanent partial loss of use of the body.

On this and other extensive evidence in the record the trial court made the following finding:

"The claimant is presently suffering a general disability of 100%; but that much of this disability is not related to the accident of December 22, 1960. That the accident did cause an increase of the disability of the claimant, but that much of the present disability is not the result of such accident. It is the finding of this court that the claimant is now suffering general bodily disability of 25% as a result of the accident of December 22, 1960."

On this finding the court allowed claimant compensation for a period of 346.86 weeks and entered judgment in accordance therewith, from which the claimant appeals, presenting the sole question as hereinbefore stated.

The respondent argues that the trial court determined the claimant was suffering a pre-existing disability of 75 per cent loss of use of the body prior to her accidental injury and further determined that the accidental injury, consisting of a fall and a consequent broken hip, was responsible for adding to claimant's injury by an additional 25 per cent general bodily disability; and that by reason of the concurrent contribution of both disabilities,

the claimant is now presently 100 per cent permanently disabled but should be compensated for only that part of the disability which resulted from the accident. Claimant contends the trial court erred in apportioning the disability.

Respondent contends that G. S. 1959 Supp., 44-510 (3) (c) (26), now K. S. A. 44-510 (3) (c) (26), grants the court power to apportion disability. It reads:

"If a workman has suffered a previous disability and received a later injury, the effects of which together with the previous disability shall result in total permanent disability, then and in that event the compensation due said workman shall be the difference between the amount provided in the schedule of this section for his prior injury and the sum total which would be due said employee for such total disability computed as provided in section 44-511. . . ."

It is apparent the provision contemplates the prior existence of a schedule injury on which is superimposed another later injury resulting in total permanent disability, and in no case is the statute applicable unless the court finds total permanent disability. The legislature never intended to attach to a workman all previous disabilities so they may be subtracted from any disability rating he might receive at any time in the future. In most cases the legislature has provided protection for the employer and his insurance carrier by providing legislation known as the second injury fund (K. S. A. 44-566, *et seq.*).

The respondent stipulated that claimant's accident arose out of and in the course of employment. There is no contention by respondent that the claimant was disabled from performing her work prior to the accident. In fact, the evidence discloses she satisfactorily performed all of her duties as a cook and waitress.

The question raised in the instant case has been dealt with by this court on a number of occasions. In *Conner v. M & M Packing Co.*, 166 Kan. 98, 199 P. 2d 458, the claimant, who at the time of his injury was performing common labor for his employer, had been seriously handicapped for several years and had a weak back which had been stabilized by fusion of certain of the vertebrae. It was conceded he was unable to perform heavy manual labor and that there was no medical testimony the accident claimed by him to have been responsible for his condition was the cause of his injury. Even so, he was regularly employed as a common laborer with the respondent. It was not denied he was struck in the back by a heavy door on the date he claimed to have suffered the injury of which he complained. In affirming the trial court's finding of total per-

manent disability, this court stated that it had not reached its decision without consideration of appellant's contention appellee had been unable to do heavy work for years because of his physical infirmities and hence could not be totally disabled as a result of the accident in question; that such contention was not tenable for the reason that regardless of what the claimant's condition or ability to work may have been earlier, he had been, on the date of the accident, gainfully and regularly employed by the respondent on a full-time job performing each and all of the incumbent duties of the position so held. We further stated that it cannot be said a workman with some physical disability for which he has not been compensated, but who is capable of doing the work required of the position in which he is regularly employed, is not to be regarded as totally disabled under its terms if and when in the course of his employment he suffers injuries which render him wholly unable to do work of the character he had been performing in such position.

In another analogous case, *Cody v. Lewis & West Transit Mix*, 186 Kan. 437, 351 P. 2d 4, claimant suffered a back injury in November 1955. He settled his claim with his former employer, Badger Materials, Inc., after receiving treatment which was not successful in perfecting a cure. Later, on January 30, 1958, while working for the respondent, Lewis & West Transit Mix, he suffered a second injury to his back. The commissioner found the claimant was suffering a 25 per cent general bodily disability as a result of the accident occurring in 1955, and that the claimant's disability was increased to 35 per cent by reason of the second accident. The commissioner further found by reason of claimant's January 30, 1958, accident that claimant was suffering only a 10 per cent temporary partial disability. The district court modified the commissioner's award and granted a 35 per cent permanent partial disability to the claimant. After discussing the prior cases with regard to the adoption of the minority rule requiring apportionment, the absence of health standards for workmen under the act, and the rule that places upon the employer the risk of employing a workman with a pre-existing disease, this court refused to allow apportionment of the award. We further suggested the power to apportion an award was within the ambit of the legislature, and for us to write something into the statute that that body did not see fit to put there would be improper.

In our decision in *Johnson v. Skelly Oil Co.*, 181 Kan. 655, 656, 312 P. 2d 1076, a parallel case, and which was reaffirmed in the

*Cody* case, supra, we restated many of our well-settled rules of law applicable to compensation cases, saying:

". . . The risk of employing a workman with a pre-existing disease is upon the employer. Where a workman is not in sound health but is accepted for employment and a subsequent industrial accident suffered by him aggravates his condition resulting in disability, he is entitled to compensation. (*Hall v. Kornfeld-Harper Well Servicing Co.,* 159 Kan. 70, 74, 151 P. 2d 688; *Workman v. Johnson Bros. Construction Co.,* 164 Kan. 478, 190 P. 2d 863, and cases therein cited.) There is no standard of health necessary to bring a workman under the statute and accidental injuries are compensable thereunder where the accident only serves to aggravate or accelerate an existing disease or intensifies the affliction. (*Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846; *Copenhaver v. Skyes,* 160 Kan. 238, 243, 160 P. 2d 235.)

"However, respondent strenuously urges that we adopt a rule followed in some other jurisdiction to the effect that where a pre-existing disease has been materially aggravated by accidental injury the compensation award should be apportioned according to the contribution of the pre-existing condition and the accident and cites *American Rolling Mill Co. v. Stevens,* 290 Ky. 16, 160 S. W. 2d 355, 145 A. L. R. 1256, wherein it is stated:

" 'Where an accident "lights up" a pre-existing disease, the accident is compensable but award should be apportioned according to contribution of each.' (Syl. 4.)

"The mentioned decision is based upon the Kentucky statute, which is altogether different from ours, and the rule laid down appears to be the minority rule. It might be pointed out that by an amendment to the Kentucky compensation statute in 1948 the legislature expressly adopted the majority rule. (Section 342.120.) We see no reason why we should change our well-established rule and we therefore adhere to the majority rule laid down in our opinions cited above."

Respondent has cited us no case in this jurisdiction to support its contention. The legislature has expressed an unfavorable attitude with regard to apportionment of awards granted under the workmen's compensation act by restricting apportionment to specific cases as set forth in K. S. A. 44-510 (3) (*c*) (26). This court has consistently held the workmen's compensation act is founded broadly upon consideration of public policy. Its purpose is to provide protection to workmen within the limits established by the act. To this end trial courts are committed, in many decisions unnecessary to review, to a liberal interpretation of the act with the view of making legislative intent effective and not to nullify it. (*Thuillez v. Yellow Transit Freight Lines,* 187 Kan. 618, 621, 358 P. 2d 676.)

Respondent readily concedes we have no apportionment statute but urges we adopt the minority view taken by a few states. This

issue was laid to rest in *Johnson v. Skelly Oil Co.*, supra. The general rule is stated in 99 C. J. S., Workmen's Compensation, § 298, p. 1047:

"As a general rule, regardless of preëxisting conditions, if a workman's disability is precipitated by an accident arising out of his employment, which disability would in all probability not have arisen but for such accident, the entire disability both as to extent and duration is within the injury for which the statute authorizes compensation, and, in the absence of a statutory provision to the contrary, there is no prorating the extent of the disability due to the accident itself on the one hand and that due to the aggravation thereof or retardation of recovery caused by the employee's physical condition on the other. So it has been held that the amount of award is to be based on the proportion of disability to normal ability regardless of a previous partial impairment of normal ability, and it makes no difference that the employee was aged or diseased, nor will such fact enhance the amount of compensation. A diseased condition of the employee previous to the injury, which retards his recovery and lengthens the period of disability, will not justify a discontinuance of compensation as long as the incapacity results from the injury."

If we were to adopt the theory advocated by the respondent, our action would permit employers and their insurance carriers to conduct a witch hunt into a workman's past in an effort to secure evidence of prior diseases or accidents which might have left their imprint upon the workman's body and later influenced his earning capacity. Such a precedent would require the medical profession, examiner, director and trial court to surmise, speculate or prognosticate about the percentage of disability, if there be any, prior to the accident. It would serve no useful purpose but would defeat the very protection granted by the legislature in the workmen's compensation act and overrule our innumerable decisions.

In the instant case the trial court found claimant to be presently suffering a general disability of 100 per cent, that the accident of December 22 did cause and increase the disability of the claimant, but that much of the present disability was not the result of the accident of December 22. On the basis of these findings the trial court proceeded erroneously to apportion the recovery between the pre-existing disability and the disability suffered by reason of the accident of December 22 which resulted in the total disability.

In view of what has been said, the judgment of the trial court is reversed and the cause is remanded with directions to recompute the compensation due claimant on the basis of its finding of total disability.

It is so ordered.