No. 47,620

Gale Reese, *Appellant,* v. Gas Engineering and Construction Company and Home Insurance Company, *Appellees.*

(532 P. 2d 1144)

Opinion filed March 1, 1975.

*D. O. Concannon,* of Hugoton, argued the cause, and *Richard E. Samson,* also of Hugoton, was with him on the brief for the appellant.

*Ken W. Strobel,* of Williams, Larson, Voss, Strobel and Estes, of Dodge City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This is a workman's compensation case. The issue is whether the fact that the workman's primary injury is a scheduled injury under K. S. A. 44-510d precludes compensation for a second generally disabling injury, which is the direct result of the primary scheduled injury. The trial court limited compensation to the statutory allowance for the scheduled injury, and the workman has

appealed. We vacate and remand for a redetermination of whether he suffered any other disabling injury as a result of his accident.

Prior to his injury claimant was employed as a pipline welder, laying gas pipe in the field near Hugoton. His work required him to squat and kneel when welding large pipe, to jump ditches, and to walk fairly long distances in the field. On January 30, 1971, he was working under a large pipe supported by scaffolding. The scaffolding gave way and the pipe fell on his left knee, causing a compound fracture of both bones of the lower left leg. No other portion of his body was injured at that time. He was immediately hospitalized in Hugoton and treated by Dr. M. F. Frederick. When traction failed to reduce the fractures properly he was transferred to Dodge City, where he underwent surgery at the hands of Dr. Carl Zacharias, an orthopedic surgeon. Both doctors testified in this proceeding by deposition. Dr. Zacharias finally discharged claimant in January, 1972, and it is undisputed that claimant was unable to work during the prior 50 week period. The controversy is over the nature and extent of his residual permanent disability.

Claimant testified that his left leg was still weak and sore, and he tended to favor it. He also developed, he said, a sore back and shin splints in his right leg. The combination prevents him from doing his previous work, and now he works only as an inspector of welding rather than as a welder.

Dr. Frederick found a residual defect in one of the broken bones, some osteoporosis or demineralization of the bone, and weakness in the left leg due to atrophy of the thigh muscles caused by disuse. Claimant's back problem was a lumbar strain. This strain, and the pain in the right leg, were both the natural result of claimant's favoring of the injured left leg. Dr. Frederick gave claimant a 40% permanent partial general bodily disability. He was not asked to and did not rate the injury to the left knee alone.

Dr. Zacharias, on the other had, found a 50% permanent partial disability to the left knee, based on pain, weakness and limitation of motion. In his opinion there will be increasingly severe arthritis in the knee which in time will probably be totally incapacitating. At that time it may require total knee replacement. Claimant complained to him about weakness in his left ankle as well as the left knee, but made no complaint to him about his back or right leg. The 50% disability to the left knee would translate into a 15 to 20% disability to the body as a whole. This latter rating gave no consideration to any possible difficulty with the back or right leg.

On this evidence the examiner awarded 50 weeks of temporary total disability and 40% permanent partial general disablity. No review having been requested, the director approved the award. The respondent and insurance carrier appealed to the district court.

There, the court observed that "The sole question presented on this appeal is whether or not an injury covered by the Workman's Compensation Act resulting in 50% permanent disability to the left knee can sustain an award of general body disability." The court apparently concluded that even if the strain of the back and the pain in the right leg were the direct result of the injury to the left knee, compensation must be limited to that provided by the statutory schedule for half a knee, plus the statutory healing period. Such was the district court's judgment from which the claimant has appealed.

The key to the trial court's reasoning is found in the following excerpt from its findings:

"Both parties cite and rely on *Berger v. Hahner, Foreman & Cole, Inc.*, 211 Kan. 541. This court concludes that the Berger case allows compensation for traumatic neurosis as a separate and distinct injury resulting from scheduled injury but does not extend that doctrine to cover the physical effects on other parts of the body resulting from a scheduled injury. (*Gallivan v. Swift & Co.*, 136 Kan. 234, and *Cornell v. Cities Service Gas Co.*, 138 Kan. 607.)"

We think the trial court gave too narrow an interpretation to the *Berger* case. In that case the workman lost an eye—a scheduled injury. There was no other physical injury. The loss of the eye, in turn, directly caused a traumatic neurosis which was totally disabling. We held that "A workman will not be deprived of compensation for disability arising from traumatic neurosis merely because it resulted from a scheduled rather than a non-scheduled injury." (Syl. ¶ 3.)

The operative fact in *Berger* was that there was a second, distinct and disabling injury which could be directly traced to the accident through the primary injury. It did not matter that the second injury was psychological rather than physical, as is demonstrated by the *Berger* court's reliance on *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P. 2d 264.

In *Jackson*, the claimant suffered scheduled injuries to each hand. In addition he developed bicipital tendonitis of the right shoulder, which was found to be the direct result of the scheduled injuries to his hands. We held that the scheduled nature of the primary injuries was no bar to compensation for temporary total disability

resulting from the scheduled hand and unscheduled shoulder injuries, in combination. The basis for the holding was, "When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury." (Syl. ¶ 1.)

This rule, formulated in a case where the secondary injury was physical, was the basis for allowing compensation in *Berger*, where the secondary injury was psychological. Hence, to the extent that the trial court's distinction between the case at bar and the Berger case was based on a distinction between physical and psychological injuries it was not well founded. There is no distinction between physical and psychological injuries for the purpose of determining whether a workman's disability from an injury is compensable.

Since *Jackson* and *Berger*—and since the decision of the trial court in this case—we have decided *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 527 P. 2d 1044, which is controlling here. In *Bergemann* claimant suffered a crushed foot, requiring partial amputation. The result was an imbalance in walking, causing in turn a strain of the low back which was admittedly totally disabling. The trial court, like the trial court here, disallowed compensation beyond that scheduled for the foot because the back injury was the direct result of the scheduled injury, and thus only an indirect result of the accident. We reversed, relying once again on *Jackson* and saying, "We are unable to make any logical distinctions between the facts in *Jackson* and the facts in the instant case, which would justify a different result." (P. 688.) Accordingly we allowed the scheduled compensation as a minimum, but also allowed the undisputed temporary total disability caused by the combination of foot and back injuries.

In *Bergemann* we also expressly disapproved, as "too broad for general application," the dictum found in *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228—one of the cases relied on by the trial court here. The thrust of the disapproved language was that any scheduled injury naturally produces some effect on the rest of the body; such effects are not separately compensable, however, because they are to be expected and are presumed to be covered by the compensation allowed in the schedule. Followed to its logical conclusion, the disapproved language would indicate that no secondary injury, no matter how disabling, is compensable if

it is the result only of a scheduled injury. Cases since *Cornell*, as pointed out in *Bergemann*, have shown this concept to have too many exceptions to be a valid general rule, and it is this concept which *Bergemann* disapproved as demonstrably false.

The trial court, of course, did not have the benefit of our opinion in *Bergemann* when it decided this case. It would appear from that portion of its findings quoted above that the trial court relied on the since-disapproved *Cornell* generalization when it concluded that there could be no compensation for "the physical effects on other parts of the body resulting from a scheduled injury." The teaching of *Jackson* and *Bergemann* is to the contrary. If there is a disability flowing from a second and distinct injury, it is compensable even if the second injury's sole cause was a primary, scheduled injury.

Respondent suggests that the result reached below is supported by substantial competent evidence, and must therefore be affirmed under familiar rules of appellate review. The difficulty with that argument is that this court cannot ascertain from the record what conclusions, if any, the trial court reached on the questions of secondary injury or general disability. Under the approach apparently taken by the trial court it was unnecessary to determine these questions; in any event, under the trial court's rationale, there could be no compensation beyond the schedule. Thus, the trial court could have reached the result it did by finding that claimant had no injury or disability beyond that attributable to the left knee. Such was the conclusion of Dr. Zacharias. His finding of 15 to 20% *general* disability was based only on the left knee injury; he neither found nor considered any injury to the back or right leg. Such a finding, to be sure, is supported by evidence and if there were anything in the record to indicate that this was the basis of the judgment below we would be bound to affirm. On the other hand, because of its legal premise, the trial court could have just as easily reached the same result even if it had found a new and distinct injury, and a 40% general bodily disability resulting from the combination of injuries as Dr. Frederick's testimony would indicate. Such a result would be erroneous as a matter of law.

We are unable to determine which of these alternatives—if either—formed the basis of the judgment rendered below. The judgment is therefore vacated and the case is remanded for further consideration of the questions of the existence of a second injury and

the extent of any resulting disability, in the light of this opinion.
APPROVED BY THE COURT.

FROMME, J., dissenting. The Workmen's Compensation Act has for many years contained provisions for compensation to be paid in case of certain scheduled injuries. (K. S. A. 1974 Supp. 44-510d.) The last paragraph of this statute on scheduled injuries states:

"(23) Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K. S. A. 44-510, as amended, and no additional compensation shall be allowable or payable for either temporary or permanent disability: *Provided,* That the director may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than 10 percent (10%) of the total period allowed for the scheduled injury in question nor in any event for longer than fifteen (15) weeks: *Provided further,* That the return of the workman to his usual occupation shall terminate the healing period."

The effect of this court's decisions in *Jackson v. Stevens Well Service,* 208 Kan. 637, 493 P. 2d 264, *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 506 P. 2d 1175, and *Bergemann v. North Central Foundry, Inc.,* 215 Kan. 685, 527 P. 2d 1044, has been to move away from disability payments based on scheduled injuries toward payments based on general bodily disability. The present opinion of the majority just about writes the scheduled injury statute out of the Workmen's Compensation Act. In the future a claimant's attorney will be remiss, when claimant has suffered a scheduled injury, if he does not obtain medical testimony that the loss of use of the scheduled member has resulted in some other temporary or permanent disability to the body as a whole. The trick will be to obtain medical testimony that the percent of disability to the body as a whole is not based solely on the loss of use of the scheduled member. The claimant's doctor should be able to testify in most cases that the loss of the scheduled member created some new and distinct disability or injury to the claimant's body or mind.

The technical distinctions adopted by this court in changing a disability to the scheduled member to one of permanent disability to the body as a whole does violence to the provisions of K. S. A. 44-510d and will have the effect of writing the scheduled injury statute out of the act.

This does violence to the otherwise plain provisions of the act which I cannot accept and I register my dissent.

FONTRON, J., joins in the foregoing dissent.