No. 47,923

Lynn S. Chinn, *Appellee*, v. Gay & Taylor, Inc., and Travelers Insurance Company, *Appellants*.

(547 P. 2d 751)

Opinion filed March 6, 1976.

*David R. Hills*, of Kansas City, argued the cause, and *N. Jack Brown*, of Kansas City, was with him on the brief for the appellants.

*Thomas M. Van Cleave, Jr.*, of McAnany, Van Cleave and Phillips, of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a workmen's compensation proceeding in which claimant was awarded benefits for permanent partial bodily disability which developed as a result of a knee injury.

The claimant, Lynn S. Chinn, fifty years of age, was employed by respondent, Gay & Taylor, Inc., as a traveling sales executive. His job entailed travel by automobile in all states west and three east of the Mississippi river. On December 22, 1972, he twisted and injured his left knee while stepping out of a company car to attend a company business luncheon. At that time he did not injure his back or any other part of his body. About twenty years before this accident he had injured the same knee and had undergone surgery on it at that time consisting of removal of a medial cartilage.

After the December 22nd injury claimant experienced constant knee pain. He continued working but walked with a limp. In early January, 1973, he noticed a pulling sensation in his back which gradually became painful. Prior to the December 22nd incident he had had no back pain. On March 3, 1973, he first sought medical treatment for his knee. He had developed pain in his left heel and arch on walking. On April 24, 1973, claimant underwent surgery on his knee. A large free detached osteocartilaginous body, degenerated cartilage beneath the knee cap and bony spurs were removed from the knee. He underwent hospitalization, physical therapy, used crutches and was treated on a monthly basis until April, 1974, and again was treated in July, 1974. He returned to his job in June, 1973. In September, 1973, he complained to his doctor of a generalized tenderness in his back and pain when he moved his back. At the time of the hearing he was still having trouble with his left knee and leg which caused him to limp, which became more noticeable after sitting down or driving two hundred miles. Occasionally he would have a catch in his left knee which would cause him almost to lose his balance. He continued to have low back pain.

Claimant's treating physician and the only medical witness in the case was Dr. Harry B. Overesch, a qualified orthopedic surgeon who had operated claimant's knee twenty years earlier. He testified that claimant's back pain was related to his December 22nd accident because his limp altered his walking gait and the resultant postural changes caused the low back pain; there was no evidence of actual injury to the back; the back pain was a combination of referred

pain from the knee and pain caused by the change in posture and walking gait; the change of gait and positional difficulty in claimant's back resulted from his knee injury; there was no evidence of nerve root irritation or compression in the back; the alteration of gait and back mechanics came from efforts to relieve the knee pain.

It was the doctor's opinion claimant had a preexisting permanent partial disability to his left leg of about 20 to 25% as a result of his 1952 injury and surgery; claimant sustained a 30 to 35% permanent partial disability to the left knee attributable to the December 22, 1972, injury with some secondary involvement to the low back with a permament partial disability to the back of less than 5%; some aggravation of the preexisting disability resulted from this later accident so there was a total disability to the left knee of between 55 and 60%; all the foregoing conditions in claimant's leg, knee and back resulted in a permanent impairment in terms of the whole man or bodily disability of between 22 and 27%. In reaching this figure the doctor first determined claimant's general bodily disability caused by the back pain.

The workmen's compensation examiner, citing and relying on *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P. 2d 264, found that claimant's primary injury was to his left knee and as a direct result of that condition his back was injured distinct and apart from the knee and he had a 20% permanent partial disability to the body as a whole. Compensation was awarded accordingly. Upon review, and in turn upon appeal, the director of workmen's compensation and the district court sustained and adopted the examiner's findings and award. Respondent and its insurance carrier have appealed.

Appellants contend an award for disability to the body should not have been entered and compensation should have been limited to the left leg and computed as a scheduled injury under K. S. A. 44-510d. They urge the situation is similar to that presented in *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228, and should be governed by a statement made there. In that case claimant accidentally fractured both bones in his right leg immediately above the ankle. He made claim for compensation and after hearing received an award based on 60% loss of use of a foot under the scheduled injury statute. No appeal was taken from this award. Payments of compensation were made and accepted but prior to receipt of the last payment claimant made application for modification and review of the award. After hearing, both the compensation

commissioner and the trial court refused to modify. The evidence showed that one of claimant's fractured bones did not set quite straight with the result claimant developed a slight limp which threw his body somewhat out of alignment and made an unnatural use or strain upon the muscles of the leg and back. Characterizing this evidence as a "slender thread" upon which to claim partial bodily disability this court affirmed the denial action upon two separate reasons: (1) The findings and award made by the compensation commissioner at the first hearing—that the injury was a scheduled one and not to the body as a whole—was a final adjudication of those questions and not open to review on a petition to modify; and (2) the findings in the present proceeding that there had been no material change since the former hearing with respect to the loss by claimant of the use of the foot were supported by substantial, competent evidence. The court further added this comment:

". . . Fundamentally, almost any scheduled injury under our workmen's compensation law produces some—perhaps slight, although it may be substantial—unnatural result upon normal bodily functions. If it were to be held that all such results constituted general partial disability under the statute there would be little or no purpose in having scheduled injuries. . . ." (p. 609.)

The precedential value of this comment in *Cornell* has been largely eroded in a series of later cases where the issue was dealt with. First is the case relied upon by the fact finders here, *Jackson v. Stevens Well Service*, supra. There the claimant suffered traumatic amputations of appendages on both hands as a result of which he later developed bicipital tendonitis in his right shoulder. We held the scheduled nature of the primary injuries did not bar compensation for disability resulting from the scheduled hand and the unscheduled shoulder injuries, in combination. The basis for the holding was "When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury" (Syl. ¶ 1).

In *Berger v. Hahner, Foreman & Cale, Inc.*, 211 Kan. 541, 506 P. 2d 1175, the workman lost an eye which several months later caused a totally disabling traumatic neurosis. Following *Jackson*, we held that "A workman will not be deprived of compensation for disability arising from traumatic neurosis merely because it resulted from a scheduled rather than a nonscheduled injury" (Syl.

¶ 3). We treated the traumatic neurosis as a separate and distinct bodily disability even though it was a direct and natural result of the primary injury.

Next came *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 527 P. 2d 1044, in which the workman suffered a crushed foot, requiring amputation. The result was an imbalance in walking, causing in turn a strain in the low back which was totally disabling. The trial court refused to allow compensation beyond that authorized for the scheduled foot injury because the back injury was the direct result of the scheduled injury, and thus only an indirect result of the accident. Relying on *Jackson* we reversed and directed an award of compensation for bodily disability, saying "We are unable to make any logical distinctions between the facts in *Jackson* and the facts in the instant case, which would justify a different result" (p. 688). We also disapproved as "too broad for general application" (p. 689) the language we have earlier quoted here from *Cornell.*

Last in this series of cases is *Reese v. Gas Engineering & Construction Co.*, 216 Kan. 542, 532 P. 2d 1044. The workman, a pipeline welder, initially suffered a crushed left leg. After treatment which included both traction and surgery, his left leg remained weak and sore so that he tended to favor it. Later he developed shin splints in his right leg and a sore back, the latter diagnosed as a lumbar strain. Medical evidence indicated the back problem and the pain in the right leg were both the natural result of claimant's favoring of his injured left leg. The trial court limited compensation to that provided in the statutory schedule for partial loss of a knee, plus the healing period, on the theory that, as a matter of law, compensation could not be granted for the physical effects on other parts of the body resulting from a scheduled injury, citing *Cornell* and other cases. We vacated the judgment and remanded the case to the trial court to determine the existence of a second injury and the extent of any resulting disability and award compensation accordingly. Also in *Reese* we characterized the heretofore quoted generalization in *Cornell* as dictum and repeated our disapproval of it in this fashion:

". . . Followed to its logical conclusion, the disapproved language would indicate that no secondary injury, no matter how disabling, is compensable if it is the result only of a scheduled injury. Cases since *Cornell*, as pointed out in *Bergemann*, have shown this concept to have too many exceptions to be a valid general rule, and it is this concept which *Bergemann* disapproved as demonstrably false." (pp. 545-546.)

Our general holdings were:

"Compensation is allowable for disability from a second and distinct injury to a workman where it can be traced to a covered accident through a primary injury.

"The fact that the primary injury is scheduled does not bar compensation for general bodily disability where a new, distinct, and disabling injury is a direct and natural result of the primary injury." (Syl. ¶¶ 2 & 3.)

In the case at bar the fact finders, based on the medical evidence, found that appellee's back condition had reached the point where it was disabling as a new and distinct injury apart from the scheduled knee injury. All were able to relate the back condition to the knee injury and to trace it as a direct and natural result. We cannot see sufficient factual difference here from the situations in the four cited cases to make their rulings inapplicable. In all there was evidence of a second, distinct and disabling injury directly traceable to the accident through the primary scheduled injury. This situation is to be distinguished from an additional incapacity following a scheduled injury which results only from causalgia or referred pain.

Appellants assert a factual distinction exists because no specific medical term was used in definition of appellee's back condition. This is of little or no moment. Where death does not result compensation for accidental injury to the body is payable for disability (K. S. A. 44-510c, since amended). The existence, nature and extent of the disability of an injured workman is a question of fact (*Alexander v. Chrysler Motor Parts Corp.*, 167 Kan. 711, 207 P. 2d 1179; *Cody v. Lewis & West Transit Mix*, 186 Kan. 437, 351 P. 2d 4). Medical testimony is not essential to the establishment of these facts (*Conner v. M & M Packing Co.*, 166 Kan. 98, 100, 199 P. 2d 458); hence it is not necessary that a workman's disability be given a medical name or label. Here there was medical testimony that disability existed in appellee's back and appellee himself testified as to the consequences of sitting for long periods of time and of sudden movements and that because of constant back pain he could not perform his duties as efficiently and effectively by reason of his accident. Pain is simply a protective mechanism of the body calling attention to some derangement of function, disease or injury of a part. It was not fatal to appellee's claim that his back condition was not described or diagnosed in precise medical terms. Nor was it required that appellee's disability be total in nature in order to be compensable as a bodily injury. An award for partial bodily

disability is specifically provided for in K. S. A. 44-510c (*b*), recognition of which was implicit in the disposition ordered on remand in *Reese*.

Appellants further say the total disability rating given appellee for his left knee and leg allowed double recovery for one accident. As indicated, Dr. Overesch's ultimate opinion of bodily disability took into account appellee's knee disability resulting from his 1952 injury, as well as that arising from the 1972 incident. Some aggravation of preexisting condition was included. Appellants present no argument or rationale for their position beyond the bare assertion of the point and it has no merit. The rule on the matter was stated in *Poehlman v. Leydig*, 194 Kan. 649, 400 P. 2d 724:

> "The risk of employing a workman with a preexisting disability is upon the employer, and when a workman who is not in sound health is accepted for employment and a subsequent industrial accident suffered by him aggravates or accelerates the condition, resulting in disability, he is entitled to be fully compensated for the resultant disability." (Syl. ¶ 3.)

We find no error in the trial court's award of compensation for permanent partial bodily disability resulting from a combination of scheduled and unscheduled injuries.

Appellee attempts to raise the point the trial court erred in not making an award in his favor for future medical treatment; however, no cross-appeal was ever perfected on the matter; had it been, nothing could have been done because the record on appeal contains no evidence of appellee's need for future or additional medical treatment.

Judgment affirmed.

APPROVED BY THE COURT.

FROMME, J., dissenting. For the reasons set out in *Reese v. Gas Engineering & Construction Co.*, 216 Kan. 542, 547, 532 P. 2d 1044, I dissent from the court's decision. See also dissents in *Berger v. Hahner, Foreman & Cale, Inc.*, 211 Kan. 541, 550, 506 P. 2d 1175, and *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 690, 527 P. 2d 1044. This court has written the scheduled injury provisions out of the Workmen's Compensation Act.