(875 P.2d 983)
No. 69,331[1]

FLOYD S. ELLIFF, *Appellee*, v. DERR CONSTRUCTION COMPANY
and NATIONAL UNION FIRE INSURANCE COMPANY, *Appellants*.

Opinion filed December 3, 1993.

*Eldon L. Boisseau* and *James A. Cline*, of Turner and Boisseau, Chartered, of Wichita, for the appellant.

*James P. Johnston*, of the Johnston Law Offices, P.A., of Wichita, for the appellee.

Before PIERRON, P.J., LARSON and GREEN, JJ.

PIERRON, J.: Derr Construction Company (Derr) and National Union Fire Insurance Company appeal the trial court's determination that Floyd Elliff has a 49.5% work disability rating. The appellants claim there was not substantial competent evidence to

---

[1] REPORTER'S NOTE: Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish by an order dated April 26, 1994, pursuant to Rule 7.04 (1993 Kan. Ct. R. Annot. 36).

support the decision, that Elliff failed to overcome the statutory presumption of no work disability, and that the court did not consider all the factors in K.S.A. 1992 Supp. 44-510e(a) before reaching a decision. We reverse.

Elliff was injured in June 1990 while working as an ironworker for Derr in Wichita, Kansas. He consulted a physician in Wichita who recommended fusing the injured ankle. Elliff, a Texas native, wanted a second opinion and consulted Dr. Mark Sanders, an orthopedic surgeon in Texas City, Texas. Sanders performed the surgery and managed the post-surgical recovery.

Elliff did not work until April 1991, when he returned to work for Derr as a foreman. This was a supervisory position, and Elliff was paid a higher wage. Elliff left this job in September 1991. He moved back to Texas and worked for a different construction company, making a higher wage than Derr had paid him. Elliff performed all the duties of a foreman. The position required him to go into the framework with the ironworkers approximately 10% of the time. He was able to do this.

The administrative law judge found Elliff suffered a 17% permanent partial general disability due to the ankle injury and subsequent fusion. The director's review was not sought. The appeal to district court resulted in an "occupational disability rating" of 49.5%. Derr appeals this order.

The standard of review is well settled:

"In an appeal from the district court in a workers compensation case, the scope of review by an appellate court is to determine whether the district court's judgment is supported by substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below, and, if substantial evidence supports the district court's factual findings, the appellate court does not reweigh the evidence or reverse the final order of the district court. In workers compensation cases, the term 'substantial evidence' means 'evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved.' [Citation omitted.] Substantial competent evidence is also defined as evidence that is relevant and that carries enough weight to allow one to conclude that the judgment is proper. [Citation omitted.]" *Hughes v. Inland Container Corp.*, 247 Kan. 407, 410, 799 P.2d 1011 (1990).

K.S.A. 1992 Supp. 44-510e(a) sets out the statutory definition of permanent partial general disability and the factors to be con-

sidered when computing the percentage of disability. The statute also states a presumption that an individual whose post-injury wage is comparable to his pre-injury wage does not have a work disability.

It is uncontroverted that Elliff's post-injury wage exceeds his pre-injury wage. However, Elliff argues the testimony of a personnel specialist, Jerry Hardin, shows Elliff has overcome the presumption.

Hardin testified that based on a computer analysis of Elliff's pre- and post-injury abilities, Elliff's access to the labor market is restricted. Hardin based this decision on work restrictions placed on Elliff by an examining physician.

Dr. Ernest Schlachter evaluated Elliff at Elliff's request. He limited him to lifting 45 pounds and no walking on uneven ground. Hardin used Schlachter's figures to compute work disability even though Elliff's treating physician imposed different restrictions. The treating physician, Dr. Sanders, stated Elliff could occasionally lift 100 pounds or more and could frequently lift 50 pounds or more. The only activity which Sanders prohibited was kneeling or crouching.

Hardin's computer assessment employs a process of elimination which matches abilities to job description and titles, eliminating those jobs which are outside the limitations of the worker. Hardin stated the program evaluates both loss of access to the market and the ability to earn a comparable wage.

Hardin testified the computer assessment of work availability would have factored out working as an ironworker foreman because that would be considered an inappropriate job based on Elliff's restrictions. Hardin admitted that Elliff told him he could be a foreman and stay within the doctor's restrictions. Hardin also made a personal assessment of market accessibility. The assessment, which did not utilize the computer, included the fact Elliff worked as foreman, resulting in a higher percentage of available jobs. The computer analysis showed Elliff's injury excluded him from 82% of the jobs. Hardin's personal estimate was that Elliff's injury excluded him from 70-80% of the jobs available to someone of his age, education, and experience without injuries.

It is not clear that any evidence was presented about Elliff's current situation. Although the computer analysis was based on

personal information, the analysis is clearly flawed. The job Elliff is currently performing is, in his own estimation, within the limits imposed by the physicians, and it pays a comparable wage.

In *Perez v. IBP, Inc.*, 16 Kan. App. 2d 277, 826 P.2d 520 (1991), this court considered a similar issue. The question before the court was whether Perez presented sufficient evidence to overcome the presumption against a work disability. After setting out the standard for review, this court determined Perez failed to meet this burden.

The evidence showed Perez returned to work almost immediately after the injury. He worked 33 out of 57 work days and was ultimately fired for poor attendance. 16 Kan. App. 2d at 279.

The facts of the instant case are somewhat different. Elliff was off work for several months. However, he did return to work for the same company in a higher level position at a higher wage. There has been no period of unemployment since he recovered from the injury and surgery.

There was some evidence presented that, in general, foreman positions are harder to obtain than worker positions. Elliff himself has not experienced difficulty finding positions.

Hardin did not specifically address the comparable wage issue. He also did not explain how the computer analysis assesses potential wages.

Given the standard of review set out above, we hold Elliff did not present sufficient evidence to overcome the presumption set out in K.S.A. 1992 Supp. 44-510e(a).

As Elliff was unable to overcome the presumption, the court erred by awarding an "occupational disability" of 49.5%. The statute does not allow an award for "occupational disability," and the court did not define this term. It should also be noted that the method the court used to arrive at this figure is not contained in the opinion. It is possible to arrive at this figure by averaging the functional impairment assigned by Schlachter (17%) and the computer assessment of loss of access to the job market (82%). (17 + 82 = 99 ÷ 2 = 49.5.) We acknowledge there are other ways to reach 49.5%, but we should not have to speculate how the court reached its figure.

We have not found a case where the trial court averages functional impairment with work disability. We do not believe this

equation is contemplated by the statute. This formula allows for functional impairment to be factored in twice. The functional impairment is, necessarily, a component used to figure loss of access to the labor market. (If the employee has lifting restrictions as the result of a back injury, his potential job pool is restricted because of this physical impairment.) Averaging the physical impairment and work disability figures results in lowering the percentage of permanent partial general disability for which a person could recover.

The Supreme Court did approve averaging in *Hughes*. The number averaged, however, were loss of ability to perform work in the open labor market and loss of ability to earn a comparable wage. These are the two factors used to establish work disability. K.S.A. 1992 Supp. 44-510e(a). This resulted in an access-based percentage for permanent partial general disability. *Hughes*, 247 Kan. at 422. The district court has, in this case, created a formula which is contrary to the statute, and which, as stated earlier, overemphasizes the physical impairment.

The statute mandates recovery based on work disability or functional impairment. A claimant's disability rating can never be less than the percentage of functional impairment. K.S.A. 1992 Supp. 44-510e(a). Therefore, although Elliff failed to overcome the presumption, he is entitled to an award for permanent partial disability. This award can be based on a general body disability (functional impairment, K.S.A. 1992 Supp. 44-510e[a]) or a scheduled injury, K.S.A. 1992 Supp. 44-510d.

Derr argues the injury should be treated as a scheduled injury, alleging no physician's testimony in this case is believable.

Schlachter's testimony is impugned because of a transcription error. His secretary failed to delete material from a form letter. The undeleted information states Elliff is fine. This is followed by a specific discussion of Elliff's impairment. Schlachter explained this discrepancy during his deposition. Schlachter assigned a 17% total body impairment—16% to the leg injury and 1% to a bad donor site on Elliff's iliac crest.

Derr assails Sanders' testimony for a similar reason. On a form returned to Elliff's attorney, Sanders assigned Elliff a 37% total body impairment (TBI). During his deposition, Sanders stated this was an error. He assigned a 30% TBI to the leg which the

American Medical Association Guidelines equate with a 12% TBI. He assigned an additional 5-10% TBI based on Elliff's complaint of a sore back. The 5-10% TBI for back trouble was assigned without examining Elliff. Sanders based this figure on his experience with other patients with similar injuries.

Both Schlachter and Sanders assigned permanent partial figures rather than scheduled injury numbers because of after effects. Sanders' TBI assessment was based on low back pain, while Schlachter's was based on a bad donor site.

In *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶¶ 1-3, 547 P.2d 751 (1976), the Kansas Supreme Court stated:

"When a primary injury under the workmen's compensation act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury."

"Compensation is allowable for disability from a second and distinct injury to a workman where it can be traced to a covered accident through a primary injury. The fact that the primary injury is scheduled does not bar compensation for general bodily disability where a new, distinct, and disabling injury is a direct and natural result of the primary injury."

"The existence, nature and extent of the disability of an injured workman is a question of fact. Medical testimony is not essential to the establishment of these facts and it is not necessary that a workman's disability be given a medical name or label."

The district court may have found there was substantial competent evidence of some secondary disability and awarded compensation for a general body disability rather than a scheduled injury. What evidence was used is not set out in the opinion. Therefore, we are not able to determine whether the award for general disability is appropriate if that approach was taken. The court should have stated a basis for awarding compensation based on general disability. Either the low back pain or the damaged iliac might be a basis for converting from a scheduled injury to a general disability. On this record, we cannot tell what was found by the court.

We therefore reverse and remand for further findings of fact.