No. 51,554

MAE BELL CRABTREE, *Appellee,* v. BEECH AIRCRAFT CORPORATION
and STATE AUTOMOBILE & CASUALTY UNDERWRITERS, *Appellants.*

(625 P.2d 453)

Opinion filed March 25, 1981.

*John P. Woolf,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, argued the cause and was on the brief for the appellants.

*Kelly W. Johnston,* of Johnston & Johnston, P.A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This appeal arises out of a worker's compensation claim made by Mae Bell Crabtree against her employer, Beech Aircraft Corporation. The district court affirmed the examiner's award for temporary total disability. Beech and its insurance carrier appealed. The Court of Appeals technically affirmed the result reached by the trial court in *Crabtree v. Beech Aircraft Corp.,* 5 Kan. App. 2d 440, 618 P.2d 849 (1980), with a modification discussed elsewhere herein. The matter is before this court on petition for review by the appellants.

There is no dispute as to either the facts in the case or claimant's entitlement to an award—the sole issue being the sufficiency of the evidence to support an award based on temporary disability.

The chronological sequence of events must be stated in con-

siderable detail. On June 22, 1977, claimant slipped and fell on the employer's premises—resulting in a fractured coccyx. She was treated by Dr. Duane A. Murphy, an orthopedic surgeon. During the treatment Dr. Murphy learned that claimant had been diagnosed by the Wichita Clinic as having multiple sclerosis. Claimant was unaware of this diagnosis. It was the opinion of Dr. Murphy that claimant might benefit from surgical removal of the coccyx, and he referred her to Dr. Cline D. Hensley, a fellow orthopedic surgeon, for a second opinion. Dr. Hensley was affiliated with the Wichita Clinic. Dr. Murphy believed that should the coccygectomy be performed it should be done by a surgeon with the Clinic in order that claimant's surgery and multiple sclerosis treatment could be coordinated and monitored.

Dr. Hensley examined claimant on October 17, 1977. He gave her the option of surgical removal of the coccyx or waiting to see if her condition would improve. Claimant elected to wait.

On February 22, 1978, claimant's application for preliminary hearing was heard. Temporary total disability compensation of $112.67 per week was ordered paid until "further order of the Examiner." This was consistent with all evidence introduced, including the testimony of claimant and her husband.

On June 27, 1978, Dr. Hensley again saw claimant. The suggestion that a coccygectomy be performed was renewed and again declined. This was apparently the last time claimant was seen by Dr. Hensley.

On August 30, 1978, claimant was last examined by Dr. Murphy and released for work as of September 5, 1978. Dr. Murphy concluded the fracture of the coccyx had healed and claimant's condition was then coccygodynia (painful coccyx). In the way of work restriction he listed avoidance of prolonged periods of standing, walking or sitting.

The matter came on for hearing before the examiner on November 9, 1978. The evidence consisted of the prior proceeding, stipulations of the parties, and the depositions of Drs. Murphy and Hensley.

There is little disparity in the medical testimony herein. The fracture of the coccyx had healed. Claimant had some discomfort in the area of the coccyx (coccygodynia). Removal of the coccyx would in all likelihood lessen the discomfort. Occasionally in such cases discomfort lessens in time without surgery. Activity

would not physically harm claimant and restrictions against prolonged periods of sitting, standing or walking were for the comfort of claimant. Dr. Murphy was of the opinion that claimant was 10 percent functionally disabled without surgery, which could be reduced to 5 percent with successful surgery. Dr. Hensley placed claimant's functional disability rating at 20 to 25 percent, which could be reduced to 10 percent with successful surgery. Claimant was not employed at the time of the hearing.

The only issue before the examiner (and throughout this proceeding) was the award itself. The examiner awarded temporary total disability benefits from the date of injury of $112.67 per week until $50,000 has been paid or until further order. The examiner's award has been upheld through the director, district court, and essentially upheld in the Court of Appeals. The employer and insurance carrier have consistently contended the proper award should have been based on permanent partial disability and that the award entered is not supported by the evidence.

The Court of Appeals, in its opinion, 5 Kan. App. 2d at 442, correctly stated the general review of applicable law as follows:

"Before discussing the specific issues, a general review of applicable law is helpful in pinpointing the legal issues. The extent or degree of disability is a question of fact to be determined within the limits of the Workmen's Compensation Act by the trier of fact. *Boyd v. Yellow Freight Systems, Inc.,* 214 Kan. 797, 522 P.2d 395 (1974). Under K.S.A. 1979 Supp. 44-556 (*c*), our scope of review is limited to questions of law. The question of whether a district court's judgment is supported by substantial evidence is one of law and if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this Court is bound by those findings and has no power to weigh the evidence or reverse the final order of the court. The term 'substantial evidence' when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. Although this Court may feel the weight of the evidence as a whole is against the findings of fact made by the district court, it may not disturb those findings if they are supported by substantial competent evidence. *Crow v. City of Wichita,* 222 Kan. 322, 332-33, 566 P.2d 1 (1977).

"Medical evidence is not essential to the establishment of the nature and extent of an injured worker's disability, nor is a court limited by such evidence; the testimony of the claimant may be considered as well as the medical evidence. *Chinn v. Gay & Taylor, Inc.,* 219 Kan. 196, Syl. ¶ 3, 547 P.2d 751 (1976); *Polston v. Ready Made Homes,* 171 Kan. 336, 340, 232 P.2d 446 (1951); *Conner v. M & M Packing Co.,* 166 Kan. 98, 100, 199 P.2d 458 (1948).

"Although this Court does not judge the credibility of witnesses nor determine

the weight to be accorded their testimony, uncontradicted evidence that is not improbable or unreasonable cannot be disregarded by the district court unless it is shown to be untrustworthy and such uncontradicted evidence should ordinarily be regarded as conclusive. *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, Syl. ¶ 5, 573 P.2d 1036 (1978); *Anderson v. Kinsley Sand & Gravel, Inc.*, 221 Kan. 191, ¶ 2, 558 P.2d 146 (1976)."

An unusual aspect of this case is that all the evidence is consistent and harmonious. The weighing of conflicting evidence is not involved. Claimant testified in essence that on February 22, 1978, and all relevant times prior thereto, she was totally disabled. Presumably, had Drs. Murphy and Hensley been called to testify at that time they would have agreed. She was then still under medical care and had not been released to return to work. It was undisputed that subsequent thereto claimant's fractured coccyx had healed and she had been released to return to work, with some restrictions. Appellants concede claimant was temporarily totally disabled until her release to return to work on September 5, 1978. The residual pain in the area could be lessened with successful surgery and might lessen without surgery. Claimant had turned down the surgical option. Medically, there was nothing further to be done. The case was clearly ready for a final award.

On the undisputed facts we have the legal question of the type of award to which claimant is entitled.

The examiner, director, and district court held that temporary total disability benefits were appropriate.

Temporary total disability is defined in K.S.A. 1980 Supp. 44-510c(*b*)(2) as follows:

"Temporary total disability exists when the employee, on account of the injury, has been rendered completely and temporarily incapable of engaging in any type of substantial and gainful employment."

Temporary disability was discussed in *Rose v. Thornton & Florence Electric Co.*, 4 Kan. App. 2d 669, 609 P.2d 1180, *rev. denied* 228 Kan. 807 (1980), wherein the Court of Appeals held in Syl. ¶¶ 1-3:

"The purpose of temporary total disability compensation is to compensate an injured worker for loss of wages during the healing period, the time it takes the worker to recover from the injury."

"An injury is no longer temporary when maximum recovery is reached or when the worker's condition becomes medically stationary or stable."

"Maximum recovery and medical stability are key factors in determining the time demarcation between temporary disability and permanent disability."

As previously noted, claimant's condition herein was medically stationary or stable. The healing period was over. Successful surgery would have lessened her residual pain, but this option had been declined. Nothing further remained to be done medically. The mere possibility claimant might improve spontaneously in time does not alter the situation. Indeed, it would be extremely rare for any physician to completely rule out any possibility of a spontaneous reduction of pain in the future for a particular condition. Such possibility does not convert a permanent disability into a temporary disability.

We conclude the award of temporary total disability benefits was not supported by substantial competent evidence. The only conclusion, as a matter of law, to be drawn from the evidence was that claimant's disability was permanent in nature.

Although not necessary to the determination of this case, matters raised in the Court of Appeals majority opinion must be discussed in the interest of avoiding future confusion in the law. The Court of Appeals held that the evidence was insufficient to support an award of "100 percent temporary total disability." Then the majority proceeded to conclude at 5 Kan. App. 2d 445:

"[T]he trial judge, although he erroneously labeled the award 100 percent temporary total rather than 100 percent temporary partial, did not err in granting the award."

A finding of temporary total disability is a finding of 100 percent temporary disability. A finding of temporary partial disability is a finding of less than 100 percent or total disability. "Total" and "partial" are mutually exclusive terms. A claimant cannot be 100 percent temporarily partially disabled. Language to the contrary in the Court of Appeals opinion is specifically disapproved.

Further, the majority opinion of the Court of Appeals held in Syl. ¶ 3:

"A claimant who has a temporary partial disability is entitled to draw the maximum compensation to which he or she is entitled unless the claimant is employed. An injured worker's physical ability to be employed even though suffering from a temporary partial disability will not defeat or diminish the amount of compensation due if the worker is not actually employed."

As correctly noted in the dissenting opinion of Judge Rees at 445-447:

"The Act [Workmen's Compensation Act, K.S.A. 44-501 *et seq.*] directly defines permanent total, temporary total and permanent partial disability. K.S.A. 1979 Supp. 44-510c (*a*) (2), -510c (*b*) (2), -510e (*a*). Total disability entitling a claimant to temporary total or permanent total disability compensation is complete *incapability to engage in any type of substantial and gainful employment.* K.S.A. 1979 Supp. 44-510c (*b*) (2), -510c (*a*) (2). Partial disability entitling a claimant to permanent partial disability compensation is *inability to engage in work of the same type and character as performed at the time of injury.* K.S.A. 1979 Supp. 44-510e (*a*). Compensation payable for each of these three 'disabilities' is for *loss of wage earning capacity.*

"There is no direct definition of temporary partial disability in the Act. There is only a statutory expression of the formula for computation of weekly compensation for temporary partial disability. K.S.A. 1979 Supp. 44-510e(*a*). The cornerstone of this formula is the 'difference between the average gross weekly wage . . . and the amount [claimant] is actually earning after [the] injury in any type of employment.' The post-injury actual earnings referred to are not limited to earnings from work of the same type and character as performed at the time of injury. In contrast to the formula for computation of permanent partial disability compensation, the temporary partial disability compensation formula factors do not include a disability percentage, a number determined as a conclusion of fact which is frequently if not most often drawn from opinion evidence. Temporary partial disability compensation is keyed to the difference between pre-injury and post-injury earnings, a fact ordinarily indisputable and ascertainable without debate or the need for opinion evidence. Compensation payable for temporary partial disability is for *actual wage loss.*

"Loss of wage earning capacity and actual wage loss are distinct, different concepts.

. . . .

"[T]emporary partial disability compensation is not payable unless there are actual post-injury earnings."

Inasmuch as claimant had not been employed since her accident, no award for temporary partial disability would have been proper even if her disability had been temporary in nature.

The judgment of the district court is reversed and remanded with directions to determine a proper award based on permanent disability.