(817 P.2d 212)

No. 66,293

MIGUEL C. TOVAR, *Appellant*, v. IBP, INC., *Appellee*.

Petition for review denied November 5, 1991.

Opinion filed August 30, 1991.

*Gary L. Jordan*, of Ottawa, for the appellant.

*Gary M. Korte*, senior litigation attorney, of IBP, Inc., of Emporia, for the appellee.

Before LEWIS, P.J., ELLIOTT, J., and E. NEWTON VICKERS, District Judge, assigned.

LEWIS, J.: This is an appeal by the claimant from the decision of the district court in a workers compensation action. After review, we affirm in part, reverse in part, and remand.

The claimant was employed by the respondent, IBP, Inc., as a blade trimmer at its processing plant in Emporia. The claimant's duties as a blade trimmer required him to work eight hours per day trimming the fat off of the backs of processed cattle. He did so by holding a hook in his left hand and a knife in his right hand. As slabs of meat passed by the claimant's position, he

removed them from the conveyor belt, trimmed the fat from the back, and placed the slab back on the conveyor belt. As can be imagined, a job of this nature requires a considerable amount of bending and flexing of the wrists and gripping with the hands.

The claimant began to experience considerable pain and disability in his hands and arms. There is no argument by the respondent that whatever disability exists is, in fact, job related, and the claimant is entitled to compensation. The issues involved in this appeal revolve around the amount of that compensation.

The claimant consulted four physicians concerning the problems with his hands, wrists, and arms and the extent of his disability. The claimant and three of the physicians testified at the compensation proceeding and gave varying opinions of the extent and location of the claimant's disability. The Administrative Law Judge (ALJ) and the Director of Workers Compensation awarded the claimant a 15 percent impairment to each arm. The district court concluded that the claimant had suffered a nine percent impairment to each arm.

Another, but totally unrelated, issue is whether the claimant was entitled to be compensated for a five- or six-day work week. The district court concluded that the appropriate award should be based on a five-day work week.

The claimant appeals the determination of disability and the decision of the length of the work week on which compensation should be based.

## THE CLAIMANT'S DISABILITY

The district court's finding as to the extent of the claimant's impairment and disability differs from the testimony of all four witnesses. The claimant argues that there was simply no evidence presented on which the district court could have based its finding of a nine percent impairment.

The respondent argues that this court is not bound by medical testimony but is free to take into account other testimony and to weigh the credibility of the testifying physicians. The respondent argues that there is substantial competent evidence in the record to support the district court's finding as to the percentage of impairment.

Our scope of review in cases of this nature has been stated many times. The standard is one of substantial competent evidence. It is well settled that, in workers compensation cases, the "existence, extent and duration of an injured workman's incapacity is a question of fact for the trial court to determine." *Boyd v. Yellow Freight Systems, Inc.*, 214 Kan. 797, 803, 522 P.2d 395 (1974). Under K.S.A. 1990 Supp. 44-556(a), this court's scope of review is limited to questions of law:

" 'The question of whether a district court's judgment is supported by substantial evidence is one of law and if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this court is bound by those findings and has no power to weigh the evidence or reverse the final order of the court. The term "substantial evidence" when applied to worker's compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved.' " *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981).

Even if this court feels that the weight of the evidence, as a whole, is against the findings of fact made by the district court, it may not disturb those findings if they are supported by substantial competent evidence. 229 Kan. at 442. Further, medical evidence is not essential to the establishment of the existence, nature, and extent of an injured worker's disability. *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, 201, 547 P.2d 751 (1976); *Carter v. Koch Engineering*, 12 Kan. App. 2d 74, 76, 735 P.2d 247, *rev. denied* 241 Kan. 838 (1987). Thus, the district court, as the finder of fact, is free to consider all of the evidence and decide for itself the percentage of disability. 12 Kan. App. 2d at 76.

In the instant matter, the district court had for its consideration the testimony of four witnesses relative to the claimant's physical condition. The claimant himself testified, along with Drs. Delgado, Rempel, and Hamilton. We have analyzed the testimony of these four witnesses, and it is our opinion that there is substantial competent evidence to support the district court's finding of a nine percent disability to both the right and left arms.

Dr. Delgado was a board-certified orthopedic surgeon who had examined the claimant. Dr. Delgado expressed his opinion that the claimant had a two percent impairment in his left hand and a three percent impairment in his right hand. Dr. Delgado did

not conclude that the claimant had suffered significant disability to his forearms.

Dr. Rempel was a board-certified plastic and reconstructive surgeon who specialized in hand injuries. Dr. Rempel examined the claimant on one occasion and concluded that the claimant had an impairment of two percent in each hand.

The claimant presented the testimony of Dr. Hamilton in support of his position. Dr. Hamilton is a practicing physician who works in the field of orthopedics but is not a board-certified orthopedic surgeon. The evidence indicates that Dr. Hamilton frequently performs examinations and gives ratings for workers compensation claimants and that he frequently examines claimants who are clients of the attorney for the claimant. Dr. Hamilton did not have surgical privileges at any hospital in the area. Dr. Hamilton testified that, in his opinion, the claimant had suffered a 15 percent impairment to each side; a side includes the forearm, wrist, and hand.

As can be seen, the testimony as to the extent and nature of the claimant's disability was sharply conflicting. In addition to the medical evidence presented, the claimant testified concerning what he felt to be his disabilities and the location of those disabilities.

The claimant argues that, since Dr. Hamilton was the only physician who testified that the claimant had suffered an injury to his wrists and forearms, the trial court had no option but to adopt his rating of a 15 percent impairment. We do not agree.

The ultimate decision concerning the extent and nature of the disability is one which must be made by the trial court on the basis of the evidence presented. As we pointed out earlier, the trial court is not bound by the medical evidence presented in the case and has the responsibility of making its own determination.

We believe that the decision of the trial court is supported by substantial competent evidence. The trial court has the right and the obligation to weigh the evidence to determine the credibility of the witnesses, including the physicians who testified, and utilize that as a factor in making its decision. *Crabtree*, 229 Kan. at 442; see *Chinn*, 219 Kan. at 201. In the instant matter, the physicians for the respondent rated the claimant's disability at 2

percent, while the physician retained by the claimant rated him at 15 percent. We see nothing in the record which required the district court to adopt, as its finding, the testimony of the physicians for either party. The district court is the exclusive judge of the credibility of the witnesses. It is the function of the district court to decide which testimony is more accurate and/or credible, and to adjust the medical testimony along with the testimony of the claimant and any other testimony which may be relevant to the question of disability.

We hold that, based upon our review of the entire record, there is substantial competent evidence in the record to support the district court's finding of a nine percent disability in each of the claimant's arms.

## A FIVE- OR SIX-DAY WORK WEEK

The next issue on this appeal concerns the proper interpretation of K.S.A. 1990 Supp. 44-511(b)(4)(B) and the application of that statute to the evidence presented. The question to be determined is whether the claimant's compensation should be computed on the basis of a five-day work week or a six-day work week. As might be imagined, the claimant contends that the compensation should be calculated on the basis of a six-day work week, while the respondent argues in favor of a five-day work week.

Our resolution of this issue depends upon our construction of the statute. In this regard, our scope of review is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

The applicable statute is K.S.A. 1990 Supp. 44-511(b)(4)(B), which reads in pertinent part:

"If at the time of the accident the employee's money rate was fixed by the hour, the employee's average gross weekly wage shall be determined as· follows: . . . (B) if the employee is a full-time hourly employee, as defined in this section, the average gross weekly wage shall be determined as follows: (i) A daily money rate shall first be found by multiplying the straight-time hourly rate applicable at the time of the accident, by the customary number of working hours constituting an ordinary day in the character of work involved; (ii) *the straight-time weekly rate shall be found by multiplying the daily money rate by the number of days and half days that the employee usually and regularly worked, or was expected to work,* but 40 hours shall constitute the minimum hours for computing the wage of a full-time hourly employee; (iii) the average weekly overtime of the

employee shall be the total amount earned by the employee in excess of the amount of straight-time money earned by the employee during the 26 calendar weeks immediately preceding the date of the accident, or during the actual number of such weeks the employee was employed if less than 26 weeks, divided by the number of such weeks; and (iv) the average gross weekly wage of a full-time hourly employee shall be the total of the straight-time weekly rate, the average weekly overtime and the weekly average of any additional compensation." (Emphasis added.)

The question is whether the claimant was regularly expected to work five or six days a week. This appears to be a case of first impression, and we find no Kansas appellate court decisions relevant to the question at hand.

In construing statutes, the fundamental rule by which we are guided is that "the purpose and intent of the legislature governs when that intent can be ascertained from the statutes." *Nordstrom v. City of Topeka*, 228 Kan. 336, Syl. ¶ 1, 613 P.2d 1371 (1980). In determining the legislative intent of a workers compensation statute, the act is to be liberally construed to permit an award of compensation. 228 Kan. 336, Syl. ¶ 2. Further, when a workers compensation statute is subject to more than one interpretation, it must be construed in favor of the worker if such construction is compatible with legislative intent. 228 Kan. 336, Syl. ¶ 3.

The testimony on the question of the number of days per week that the claimant was expected to work was provided exclusively by the claimant. This testimony was as follows:

"Q. Mike, when you were hired at IBP to go to work there, how many days a week were you told that you were expected to work?

"A. Six if we worked Saturday.

"Q. And how does that work as far as whether you work Saturday or not?

"A. It's usually posted on Friday and they let us know on Friday if we have to work on Saturday.

"Q. Are you expected to keep every Saturday available to work?

"A. Yes.

"Q. Do you have any choice in that matter?

"A. No.

"Q. And a regular day is how many hours?

"A. A regular day during the week is eight hours.

"Q. And if you get a full day Saturday, is that also eight hours?

"A. It's eight. On occasion we have worked ten.

"Q. And as far as your actual experience up to August 7th of 1989, were you working frequently on Saturday?

"A. The majority of the time."

On cross-examination, the claimant testified as follows:

"Q. When you were first hired by IBP, you were guaranteed so many hours per week, is that right?

"A. Correct.

"Q. How many hours was that?

"A. Guaranteed 40.

"Q. You were not guaranteed 48?

"A. No.

"Q. Okay. And you don't—you are not required to show up every Saturday morning, are you?

"A. Yes, we are.

"Q. Are you told—so right now you know that for the next ten Saturdays you're going to work Saturday?

"A. Oh, if they have it posted on Friday that we have to work Saturday, we have to work Saturday.

"Q. Okay. So you won't find out if you work Saturday until you show up Friday, is that correct?

"A. Correct.

"Q. And when you work Saturday, you get paid time and a half for your hours, that's how they pay you, right?

"A. If you have worked 40 hours that week.

"Q. Okay. So anything over 40 hours is time and a half.

"A. Yes.

"Q. And that's by agreement, that's what you entered into as far as your agreement with IBP when you were hired on with them?

"A. Yes."

Based on this testimony, the district court determined that the claimant's regular work week was five days. We disagree with this conclusion.

The brief of the respondent emphasizes that the claimant was guaranteed to work 40 hours per week. We note that the district court seemed to place great emphasis on the fact that the guarantee extended to the claimant by the respondent was for a 40-hour week. We do not believe that this question can be decided based upon what the claimant was guaranteed.

The language of the statute, which we have emphasized above, indicates that the weekly rate is to be determined by multiplying the daily money rate by the *"number of days and half days that the employee usually and regularly worked, or was expected to work."* The statute says nothing about the number of days an employee is guaranteed, but rather the compensation rate is to

be based on the number of days an employee is *expected* to work or the number of days an employee *regularly* works. This, in our opinion, is something greatly different from the number of days an employee is guaranteed to work.

Factually, the claimant's testimony establishes that he was expected to work on Saturdays and that he regularly did work on Saturdays. The testimony indicates that the claimant was told to be available and ready to work on Saturday. He did not know, and could not find out until the day before, whether he was going to have to spend his Saturday working for the respondent. As a result, the claimant was expected to hold his Saturdays open and available for the respondent rather than to make plans for himself or his family on that day. It also appears from the testimony that the claimant, in fact, worked most Saturdays or, at the very least, did so "the majority" of the time.

If an employee is told that he is to keep Saturdays open and available for work, it appears to us that this is tantamount to a directive that he is expected to work each Saturday. Whether he does or not is largely irrelevant because the statute bases compensation on the number of days per week an employee is "expected" to work, not the number of days an employee is guaranteed to work or actually does work.

The claimant testified that he was expected to keep every Saturday available for work. This testimony was not refuted by the respondent. We can only conclude that, if the claimant, as he testified, was expected to be available on each and every Saturday to work for the respondent, then the claimant was expected to work on Saturday within the meaning of the statute.

We hold that the evidence in the record in the matter now before this court establishes that the claimant was expected to work a six-day work week. We further conclude that the evidence shows that the claimant did, in fact, regularly work a six-day work week. Consequently, we conclude that the statute in question requires that the claimant's compensation be computed on the basis of a six-day work week.

The respondent argues that the fact that the claimant was paid time-and-a-half for his work on Saturdays is relevant to this issue. We do not agree. K.S.A. 1990 Supp. 44-511(b)(4)(B)(ii) bases straight-time pay on the number of days a claimant works, not

the number of hours. Because the claimant usually and regularly worked, and was expected to work, on Saturdays, the facts fit within the statutory language provided for in subsection (b)(4)(B)(ii), and the claimant's average weekly wage must be calculated on a six-day work week.

Accordingly, we reverse the decision of the district court calculating the claimant's pay on a five-day work week. We remand this matter with directions to the district court to compute the claimant's average weekly wage on a six-day work week.

Affirmed in part, reversed in part, and remanded with instructions.